**Carrie Irene LANE, Plaintiff,**

v.

**WSM, INCORPORATED, Opryland, USA; Tri-Son, Inc.; and Fan Clubs, Inc., Defendants.**

**No. C–C–83–363–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Dec. 30, 1983.

William Benjamin Smith, Price & Smith, Charlotte, N.C., for plaintiff.

Harry C. Hewson, Jones, Hewson & Woolard, Charlotte, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

This case was heard on December 1, 1983, on motion of defendants WSM, Incorporated, and Tri-Son, Inc., to dismiss the complaints against them for lack of personal jurisdiction.

This is a personal injury suit with jurisdiction based on diversity of citizenship. Plaintiff is a North Carolina resident. Defendant WSM, Incorporated, is a Tennessee corporation with a principal place of business in Nashville, Tennessee. Opryland, USA, is a trade name and division of WSM, Incorporated. Defendant Tri-Son, Inc., is a Colorado corporation with its principal place of business in Wild Horse, Colorado. Defendant Fan Clubs, Inc., is a defunct Colorado corporation which before its demise was wholly owned by those who presently own and control Tri-Son, Inc.

Plaintiff alleges that she was injured while attending the "Fan Fair" Country and Western Show at the Tennessee State Fair Grounds in Nashville, Tennessee, on June 9, 1983. "Fan Fair" is an annual one-week event co-sponsored by WSM, Incorporated and The Country Music Association, Inc., of Nashville, Tennessee (not a party to this suit). Tri-Son, Inc., operating through its trade name, International Fan Clubs Organization (IFCO), organizes an annual dinner and show during the week of Fan Fair. IFCO was invited by the Fan Fair Planning Committee to produce its show during the week of Fan Fair; IFCO and the Planning Committee have no written contract covering production of the show. IFCO is responsible for setting up and producing the dinner and show, arranging for live music, advertising, and printing and selling the tickets. Plaintiff alleges that she was injured while attending the IFCO dinner and show at the Fan Fair.

Plaintiff has submitted affidavits indicating that she originally visited the Fan Fair festivities and the IFCO show in response to an advertisement in the Music City News in 1982, one year before the alleged injury. The Music City News is a national monthly publication distributed in North Carolina.

Plaintiff contends that in 1983, the year of her alleged injury, she attended the Fan Fair activities in response to a brochure mailed directly to her home by the Country Music Fan Fair. A copy of the brochure

was submitted to the court; it includes information about Fan Fair, a clip-off order form for purchasing tickets to Fan Fair, and a short notice that one may receive information about the IFCO dinner and show by writing to IFCO in Wild Horse, Colorado.

An affidavit submitted by plaintiff's sister supports a finding that plaintiff received the brochure directly by mail; that plaintiff voluntarily contacted defendant Tri-Son in Colorado, requesting information about the IFCO dinner and show; that defendant Tri-Son mailed plaintiff a letter informing her of the availability of tickets to the dinner and show and including an order blank for purchasing tickets; that plaintiff mailed a check to defendant Tri-Son in Colorado to pay for the tickets she desired; and that defendant Tri-Son, in return, mailed plaintiff several tickets to the IFCO dinner and show.

Defendant Tri-Son denies ever having mailed a promotional brochure to plaintiff or to anyone else. Tri-Son admits that it places advertisements in the Music City News. Tri-Son contends in an affidavit that the brochure received by plaintiff was mailed to her by WSM. WSM neither admits nor denies having mailed plaintiff a promotional brochure. An inspection of the brochure reveals that it was mailed by the "International Country Music Fan Fair," having an address in Nashville, Tennessee.

### 1. *Requirements for the exercise of personal jurisdiction.*

In order to determine whether *in personam* jurisdiction may be exercised, a court must engage in a two-step inquiry. First, the court must determine whether North Carolina law confers personal jurisdiction over this defendant. Second, the court must examine whether the exercise of jurisdiction in this particular case would violate due process of law. *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193 (4th Cir.1976).

North Carolina's long arm statute, N.C. Gen.Stat. § 1–75.4, authorizes any court with subject matter jurisdiction over the action to exercise personal jurisdiction over

a non-resident defendant in the following circumstances:

(1) Local Presence or Status.—In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party:

a. Is a natural person present within this State; or

b. Is a natural person domiciled within this State; or

c. Is a domestic corporation; or

d. Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise.

\* \* \* \* \* \*

(3) Local Act or Omission.—In any action claiming injury to person or property or for wrongful death within or without this State arising out of an act or omission within this State by the defendant.

This statute is a "legislative attempt to assert *in personam* jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution." *See, Sparrow v. Goodman,* 376 F.Supp. 1268, 1270 (W.D. N.C.1974). Thus it is possible that defendants' contacts with this forum are sufficient to satisfy the requirements of N.C. Gen.Stat. § 1–75.4, but that they are yet insufficient to satisfy the requirements of due process.

■ Under federal law, a corporation is subject to suit in a foreign state if it has exercised the privilege of conducting activities within the state, and has enjoyed the benefits and protections of the state's laws. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), "it has clear notice that it is subject to suit there." *World-Wide Volkswagen Corp. v. Wood-*

*son,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In sum, the court must apply a "reasonableness" test to determine whether the defendant, although not residing in the forum state, has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, supra,* 326 U.S. at 316, 66 S.Ct. at 158.

### 2. *Defendant WSM.*

■ Applying the two-part test to the facts concerning defendant WSM, it appears that the jurisdictional requirements of both N.C.Gen.Stat. § 1–75–4 and the Due Process Clause have been met.

WSM placed advertisements in a national magazine, and engaged in a direct mail campaign in North Carolina for the purpose of selling tickets to "Fan Fair" to North Carolina residents. Those facts, standing alone, would not be sufficient to sustain the exercise of *in personam* jurisdiction over defendant WSM by this court in North Carolina. *Cf. Hankins v. Somers,* 39 N.C.App. 617, 251 S.E.2d 640 (1979). (Advertisement in magazine with nationwide circulation alone insufficient to sustain exercise of personal jurisdiction.) However, defendant WSM has also informed the court that at the time of plaintiff's alleged injury, defendant operated two radio stations which broadcast from Nashville, Tennessee, signals which could be heard at various places in North Carolina. There is no evidence as to the extent of revenues derived by WSM directly from the broadcast of its radio signals to North Carolina. However, it is inconceivable that WSM, also known as Opryland, USA, would not have intended its broadcast advertisements for "Fan Fair," *heard* in North Carolina, to be *heeded* by its North Carolina audience.

In making this determination, the court is required to consider North Carolina's interest in the welfare of one of its citizens. This is particularly relevant where there is no evidence before the court that plaintiff has engaged in forum shopping. *Lee v.*

*Walworth Valve Co.,* 482 F.2d 297 (4th Cir.1973). Fewer "minimum contacts" are required of a non-resident defendant in an action involving one of the forum state's citizens than would be required in a case involving a plaintiff with few connections to the forum state. *Id.*

The court finds that by placing advertisements in a magazine calculated to reach a North Carolina audience; conducting a direct mail campaign in North Carolina; and broadcasting advertisements over North Carolina's airwaves, defendant has engaged in substantial activity in this state, pursuant to N.C.Gen.Stat. § 1–75.4–(1)(d). Further, the court finds that the mailing by WSM to plaintiff of a clip-off ticket order form was an act from which plaintiff's alleged injury "arose" for purposes of N.C. Gen.Stat. § 1–75.4(3).

The court further finds that WSM's advertising and business activities in the State of North Carolina demonstrate that WSM has purposefully availed itself of the privilege of conducting activities within this state, and constitute minimum contacts which allow the exercise of personal jurisdiction over this defendant in a North Carolina court.

### 3. *Defendant Tri-Son, Inc.*

■ It is not necessary to engage in a two-step inquiry with regard to defendant Tri-Son, Inc., because the court finds that the North Carolina long-arm statute, as broad as it is, does not permit the exercise of personal jurisdiction over this defendant in this case.

The evidence before the court reveals that defendant Tri-Son's contacts with the State of North Carolina consist of the following: Tri-Son arranges for, without payment, the placement of a one-sentence notice of the IFCO dinner and show in the promotional brochure mailed to North Carolina residents presumably by WSM; Tri-Son mails information about (and, upon payment, tickets to) the IFCO dinner and show to North Carolina residents at their request; and Tri-Son places advertisements in the Music City News, a national publica-

tion which reaches North Carolina residents.

This conduct on the part of Tri-Son does not constitute "substantial activity" within the meaning of N.C.Gen.Stat. § 1–75.-4(1)(d). Nor was this activity so significant that plaintiff's injury can be considered to have "arisen out of" an act committed in this state by Tri-Son. § 1–75.4(3).

Tri-Son's activity in the State of North Carolina is less substantial than WSM's activity in two critical respects. First, the solicitation to attend the IFCO event, unlike the solicitation to attend Fan Fair, took the form of an invitation to write to Colorado for further information. Tickets would then only be sent following two communications to the Colorado defendant by a North Carolina resident. In contrast, the solicitation to attend Fan Fair, in the promotional brochure, included a clip-off order blank through which a North Carolina resident could order tickets. Further, Tri-Son engages in no additional activity which in any manner connects it to North Carolina. *See O'Neal v. Hicks Brokerage Co.*, 537 F.2d 1266 (4th Cir.1976). (Defendant had insufficient contacts with South Carolina for exercise of *in personam* jurisdiction where sole contacts with forum state were telephone calls confirming dates of cotton shipment.)

On the basis of the foregoing facts and conclusions, it is HEREBY ORDERED, ADJUDGED AND DECREED:

1. The motion of defendant WSM, Incorporated, Opryland USA, to dismiss the complaint for lack of personal jurisdiction is DENIED.

2. The motion of defendant Tri-Son, Inc. to dismiss the complaint against it for lack of jurisdiction over the person is ALLOWED.

3. Plaintiff shall have thirty (30) days from the entry of this order to inform the court on the record whether she wishes to proceed solely against defendant WSM, Incorporated, Opryland USA, or whether she wishes to request a transfer of this case to

a jurisdiction where it might have been brought against both defendants.