### WESTERN STEER—MOM 'N' POP'S, INC., Plaintiff,

v.

### FMT INVESTMENTS, INC., et al., Defendants.

### No. ST–C–83–214.

United States District Court, W.D. North Carolina, Statesville Division.

Jan. 16, 1984.

 

Samuel E. Aycock, Morganton, N.C.,
Bruce W. Baber, King & Spalding, Atlanta,
Ga., for plaintiff.

John F. MacLennan, Kattman, Eshelman
& MacLennan, P.A., Jacksonville, Fla., for
defendants.

## ORDER

POTTER, District Judge.

The Defendants have moved the Court to
dismiss this action for lack of personal
jurisdiction or, in the alternative, to trans-

fer the venue of this action. The parties submitted briefs, affidavits and depositions concerning this motion, and the matter was heard on October 18, 1983. Subsequent to the hearing, the parties submitted additional briefs on the issues presented in the motion. Based on the parties' submissions and arguments, the Court enters the following findings of fact and conclusions of law for the purpose of the above motions only:

## FINDINGS OF FACT

(1) Plaintiff Western Steer is a North Carolina corporation engaged in the business of operating and franchising "Western Steer Family Steakhouse" restaurants.

(2) Defendant, Raymond T. Todd ("Todd") sought out the Plaintiff at its Claremont, North Carolina office, where he solicited the Plaintiff's interest in making him and his four "partners" a Western Steer franchisee.

(3) Defendant Todd, in pursuit of his franchise interest, met with Western Steer's franchising personnel at a Western Steer restaurant in the Hickory area and received information and materials with respect to the franchising program. This visit occurred prior to the formation of FMT Investments, Inc. ("FMT").

(4) After this visit, the parties continued their franchise discussions through telephone calls, correspondence and further conversations with the franchising department over the succeeding months.

(5) On January 9, 1979, Defendant Todd tendered to Western Steer a $15,000.00 check drawn on Todd and his wife's personal account for payment of the initial franchise fee. The check was submitted by letter on FMT letterhead.

(6) Defendant Todd and his four associates incorporated FMT around the time of tender of the franchise check.

(7) Defendant Todd personally guaranteed the mortgage on the FMT Western Steer.

(8) Defendant Todd forwarded a FMT prospectus to the Plaintiff which stated that the "sole purpose" for which FMT was formed was to develop and operate Western Steer franchises.

(9) Defendant Todd and his four associates are the sole officers, shareholders, directors, and investors in FMT.

(10) Defendant Todd is the president, the principal shareholder, a director, and the chief executive officer of FMT.

(11) Between the date of the franchise agreement and the restaurant's opening, Defendant Todd and Defendant FMT received various services from the Plaintiff's home office in Claremont necessary to create the restaurant, including (1) building blueprints, construction plans and specifications; (2) equipment plans and layout instructions; (3) furniture, fixture and interior decor plans; (4) sign specifications; and (5) assistance in site selection and formation and approval of a site plan.

(12) In May of 1980, Defendant Todd attended a five week Western Steer training school for new franchisees in North Carolina.

(13) Defendant Todd did not have any prior restaurant or food service experience.

(14) FMT also sent its meatcutter, Tony Johnson, to the Western Steer training program in North Carolina, for a two-week session on meatcutting techniques.

(15) FMT arranged for its construction and equipment loans to be guaranteed and/or collateralized by Richard Howard, Western Steer's franchising director.

(16) Since the opening of the restaurant, Defendants Todd and FMT have had continued contacts with the Western Steer home office in Claremont, North Carolina. The contacts include: (1) the weekly submission of "daily sales reports" by FMT to the Plaintiff's North Carolina home office; (2) weekly telephone reports to the Plaintiff's home office of FMT's gross sales; (3) an accounting of franchise royalties every four weeks to the Plaintiff; (4) receipt of written operations suggestions, revised operations manual, new recipes, suggested equipment changes and various other mate-

rials issued by the Plaintiff to its franchisees; and (5) utilization of Western Steer's toll-free WATS line, to contact the Plaintiff and receive assistance with operational problems.

(17) There are a number of additional contacts established in the record connecting Defendant FMT and Defendant Todd and this controversy with the Western District of North Carolina.

(18) FMT and Todd have also been in contact with the Plaintiff over the last three years, in furtherance of their interest in obtaining additional franchises in the south Atlanta, Georgia area. These contacts have taken the form of telephone conversations, correspondence and personal meetings, including meetings with the Plaintiff in Claremont, North Carolina, in which Todd expressed his desire to own several franchises.

(19) The Plaintiff refused to grant Todd and/or FMT the Fayetteville, Georgia franchise.

(20) Within a few months after the Plaintiff refused to grant the Fayetteville, Georgia franchise, Todd and the other owners of FMT incorporated a separate corporation, Fayette Investments, Inc. ("Fayette"). Fayette opened a steakhouse in Fayetteville, Georgia under the name of Dakota Western Steak House ("Dakota Steak House").

(21) Todd is the president, chief executive officer and principal shareholder of FMT and Fayette. The shareholders, officers and directors of both corporations are the same five individuals. The fact that Fayette was going to operate a family steakhouse yet not be Western Steer had some bearing in deciding to incorporate Fayette.

(22) In developing the Dakota Steak House, Todd consulted the Western Steer operations manual in preparing Dakota's operations manual. Todd gave a set of Western Steer blueprints to the architect who designed the Dakota Steak House. Todd purchased the equipment from the same dealer in North Carolina with whom

he dealt in purchasing the equipment for the Western Steer. The methods of service and daily operation of the restaurant are identical to the Western Steer's operation. The manager, meatcutter, assistant manager, and some of the waitresses for the Dakota Steak House were trained at the Western Steer prior to the opening of the Dakota. The personnel who trained the prospective Dakota employees were full-time employees of the Western Steer. The opening crew for the Dakota were selected employees from the Western Steer.

(23) The Plaintiff claims that Defendants FMT, Fayette, and Todd misappropriated the Plaintiff's trade secrets, breached the franchise agreement and conspired with one another "for the purpose of obtaining without payment in the form of franchise fees, royalties or otherwise, the proprietary information of the Plaintiff, including but not limited to building plans and specifications, equipment plans, equipment specifications, equipment layouts, recipes and operational manuals setting forth techniques of food service and preparation." Such information was acquired, if at all, predominantly in North Carolina, where the Plaintiff's headquarters was located, where the Western Steer training program operated and the origination point from which the Plaintiff disseminated its trade secrets to the franchisees. As previously mentioned, the record is replete with evidence as to the services the Defendant obtained from the Plaintiff under the franchise agreement.

(24) The Western District of North Carolina is a convenient forum for this litigation. A substantial proportion of the likely witnesses reside in this district, documentary evidence is located here and discovery undoubtedly will occur here. In addition, the franchise agreement states that North Carolina law governs and one of the Plaintiff's claims is a North Carolina statutory cause of action under N.C.G.S. § 66–152 *et seq.*

## CONCLUSIONS OF LAW

■ (1) The Plaintiff has the burden of showing that personal jurisdiction exists.

The facts, however, are to be considered in the light most favorable to the Plaintiff, the non-moving party. *China Union Lines v. American Marine Underwriters,* 454 F.Supp. 198 (S.D.N.Y.1978).

▮ (2) Resolution of the jurisdictional question in a diversity case requires the Court to engage in a two prong inquiry. First, the Court must determine that the applicable North Carolina law permits the exercise of long-arm jurisdiction over the defendants. If the first question is answered affirmatively, the Court must next determine whether the exercise of jurisdiction satisfies the constitutional requirements of due process. *Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559, 563 (M.D.N.C.1979).

▮ (3) The North Carolina Supreme Court has simplified the task of determining whether there is a long-arm statute authorizing the assertion of personal jurisdiction by holding that N.C.G.S. § 1–75.-4(1)(d) applies to any defendant who meets the minimal contact requirements of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Dillion v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629 (1977). Thus, the issue of whether there exists statutory authority for the exercise of jurisdiction over the Defendants "collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina necessary to comport with due process." *Fieldcrest Mills, Inc. v. Mohasco Corp.,* 442 F.Supp. 424, 426 (M.D.N.C.1977); *see also, Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559, 564 (M.D.N.C.1979).

(4) The primary factors utilized in analyzing whether minimum contacts are present are " 'the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts ... and two others, interest of the forum state and convenience.' " *Fieldcrest,* 442 F.Supp. at 427,

*quoting Aftanase v. Ecomony Baler Co.,* 343 F.2d 187 (8th Cir.1965).

(5) As heretofore mentioned in the findings of fact, the contacts between FMT, through Todd, and North Carolina with respect to the franchise agreement are continuous and numerous. In addition, North Carolina has a strong interest in a cause of action brought by a North Carolina corporation for a breach of contract allegedly committed by the non-resident defendants. North Carolina also has a great interest in providing a remedy for the wrongs alleged under the North Carolina Trade Secrets Protection Act, N.C.G.S. § 66–152, *et seq.* Therefore, as to Defendant FMT, personal jurisdiction is proper in this Court as a matter of both state statutory and federal constitution law.

▮ (6) As to Defendant Raymond Todd, he is correct in asserting that the corporate entity normally insulates a corporate employee from in personam jurisdiction as to his corporate activities. *Holfield v. Power Chemical Co.,* 382 F.Supp. 388, 393 (D.Md.1974). The Courts, however, have justly recognized exceptions to general rule. The Supreme Court of North Carolina has recently stated that if an individual defendant is "a principal shareholder of the corporation and conducts business in North Carolina as principal agent for the corporation, then his corporate acts may be attributed to him" for purposes of personal jurisdiction.[1] *United Buying Group, Inc. v. Coleman,* 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979). Defendant Todd is the principal shareholder, chief executive officer, and active manager of FMT and Fayette. Through his corporate actions and his individual actions in soliciting the franchise agreement, prior to the formation of FMT or Fayette, he purposely invoked the benefits and protection of the laws of North Carolina. He had access to the North Carolina courts to enforce any rights arising out of the franchise agreement. Based on the multiple contacts established in the record connecting Todd and FMT

1. The federal courts have recognized numerous other exceptions to the general rule. *See, Hol-* *field v. Power Chemical Co.,* 382 F.Supp. 388, 392–93 (D.Md.1974).

with North Carolina there are sufficient minimum contacts with this forum to comport with the traditional notions of fairness guaranteed by the Due Process Clause of the Fourteenth Amendment. Therefore, assertion of personal jurisdiction over Defendant Todd by this Court is valid as a matter of both state statutory and federal constitutional law.

■ (7) The direct contacts of Defendant Fayette with North Carolina are insufficient to establish personal jurisdiction in this Court. Only if the contacts of Defendants Todd and FMT are fairly attributable to Fayette is personal jurisdiction established.

(8) In *Fieldcrest Mills, Inc. v. Mohasco*, 442 F.Supp. 424 (M.D.N.C.1977) the Court utilized the "alter ego" or "joint venture" theory in attributing the contacts of one corporation to another corporation for a jurisdictional determination. *Id.* at 428–30. The two corporations in *Fieldcrest* were parent/subsidiary corporations. The parent/subsidiary corporate structure, however, was of minor importance in the Court's decision. Instead, the rationale focused on the actual relationship existing between the two corporations. Among the factors considered were the reasons for the creation of the subsidiary corporation and whether the corporation benefited from the other corporation's contacts in the forum state. *Id.* at 430–31.

Although FMT and Fayette ownership is not that of parent/subsidiary corporations, the two corporations have the exact same officers, shareholders· and directors. The Plaintiff has submitted evidence which if considered in the light most favorable to the Plaintiff, establishes a reasonable inference that the owners of FMT created Fayette in order to evade the responsibilities of the franchise agreement which is the heart of this litigation. Fayette's methods of operation, type of restaurant, operating techniques, training of personnel and numerous other information was acquired from FMT employees. The FMT employees, previously inexperienced in restaurant enterprises, acquired this alleged confiden-

tial information through the franchise agreement. Considering the evidence in the light most favorable to the Plaintiff, Fayette, could reasonably have expected that the opening of the Dakota Steak House would have an effect on the franchise agreement. In fact, that effect was a factor considered by the owners in incorporating Fayette.

In conclusion, the alleged history of FMT and Fayette, their similar characteristics, the circumstances giving rise to the creation of Fayette and their symbiotic relationship has created a sufficient showing of an identity of interest that the acts of FMT may fairly be attributed to Fayette for jurisdictional purposes. To hold otherwise would exalt form over substance. Therefore, on the facts of this case, Fayette is fairly subject to *in personam* jurisdiction in North Carolina.

■ (9) In the alternative, the Defendants move the Court to transfer this litigation to Georgia pursuant to 28 U.S.C. § 1404. On December 12, 1983 the United States District Court for the Northern District of Georgia dismissed the Defendants' Georgia action. Further, it is "black letter law", that " 'a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed.' ". *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 374 F.Supp. 184, 191 (D.Del. 1974), *quoting Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). In balancing the factors justifying a transfer this case is not an appropriate case for transfer of venue pursuant to 28 U.S.C. § 1404. *See, North Carolina v. Dept. of H.E.W.*, 480 F.Supp. 929, 931 (E.D.N.C.1979) (list of factors to be balanced in deciding change of venue pursuant to 28 U.S.C. § 1404).

IT IS, THEREFORE, ORDERED that:

(1) The motion of the Defendants to dismiss for lack of in personam jurisdiction is *DENIED;* and

(2) The motion of the Defendants for transfer of venue pursuant to 28 U.S.C. § 1404 is *DENIED*.