BARCLAYS LEASING, INC., f/k/a Barclaysamerican Leasing, Inc., Plaintiff,

v.

NATIONAL BUSINESS SYSTEMS, INC., a Delaware Corporation and National Business Systems, Inc., a Canadian Corporation, Defendants.

No. C–C–90–173–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 24, 1990.

have personal jurisdiction over Defendant National Business Systems, Inc., a Canadian Corporation (hereinafter "NBS, Canada"). On September 6, 1990, Plaintiff Barclays Leasing, Inc. (hereinafter "Plaintiff") filed a response to NBS, Canada's motion to dismiss.

## I. PARTIES.

Plaintiff is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. Plaintiff is in the business of leasing machines and equipment to commercial enterprises.

Defendant National Business Systems, Inc., a Delaware Corporation (hereinafter "NBS Delaware") is a Delaware corporation with its principal place of business in South Plainfield, New Jersey. NBS Delaware is in the business of embossing plastic credit and identification cards.

Defendant NBS Canada is a Canadian corporation with its principal place of business in Mississuga, Ontario, Canada. NBS Canada is in the business of manufacturing and selling embossing, encoding and imprinting equipment used in the manufacture of plastic transaction cards.

## II. PROCEDURAL AND FACTUAL BACKGROUND.

On June 6, 1990, Plaintiff filed a complaint alleging that NBS Delaware had breached an agreement involving the leasing of 40 Embossing Modules (hereinafter "the equipment") to NBS Delaware from Plaintiff. Apparently, NBS Canada manufactured the equipment and then sold it to Plaintiff in order for Plaintiff to leaseback the equipment to NBS Delaware.

Plaintiff claimed that the lease agreement was executed between Plaintiff and NBS Delaware on May 8, 1985. The agreement called for Plaintiff to deliver the equipment to NBS Delaware. In return, NBS Delaware was required to pay $81,692.35 plus applicable taxes, assessments, fees and charges to Plaintiff on a quarterly basis beginning on August 10, 1985. Plaintiff contends, and Defendants do not deny,

Karen S. Williams, Rayburn Moon & Smith, P.A., Charlotte, N.C., for plaintiff.

William T. Hopkins, Jr., Michael A. Scheer, Gallucci Hopkins & Theisen, P.C., Fort Wayne, Ind., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on a motion, filed August 13, 1990, to dismiss for the reason that this Court does not

that NBS Delaware failed to make any payments during 1990.

In addition to the provision in the lease agreement pertaining to NBS Delaware, NBS Canada guaranteed prompt payment in full when NBS Delaware's obligations under the lease became due. According to Plaintiff, NBS Canada has defaulted on its obligation to make the payments owed by NBS Delaware.

Plaintiff states in its complaint that the lease agreement requires both Defendants to pay the amount of $211,674.44 which accounts for two quarterly 1990 lease payments—interest included. Plaintiff also states that Defendants owe liquidated damages and reasonable attorney's fees. Plaintiff further states that Defendants are required under the lease to return the equipment to Plaintiff. The total amount of joint and severable damages sought by Plaintiff against each Defendant is $1,393,-605.32.

## III. LEGAL STANDARD.

 Rule 12(b)(2) of the Federal Rules of Civil Procedure is applicable to motions to dismiss for lack of jurisdiction over a person. The burden of establishing personal jurisdiction rests with the party asserting it. *See* 2A *Moore's Federal Practice*, Par. 12.07[2.-2] at 12–55 (1990) (hereinafter "Moore's"). However, if the court decides a motion to dismiss for lack of jurisdiction over a person without an evidentiary hearing based only on the written submissions of the parties, the party asserting jurisdiction need only make a prima facie showing that jurisdiction exists. *Id.* at 12–56; *see Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Dowless v. Warren–Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir.1986); *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985); *Wyatt v. Kaplan,* 686 F.2d 276 (5th Cir. 1982). Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing. *See Dowless,* 800 F.2d at 800.

 The allegations of the complaint, unless controverted by opposing affidavits, must be taken as true. *See Thompson,* 755 F.2d at 1165. There is no requirement that the pleadings be verified and no lack of credibility will be implied by the absence of a verification of plaintiff's complaint. *See Dowless,* 800 F.2d at 1307 (citing *Bush v. BASF Wyandotte Corp.,* 64 N.C.App. 41, 45, 306 S.E.2d 562, 565 (1983)). The court may accept affidavits, interrogatories, depositions or any other legitimate method of discovery. *See Thompson,* 755 F.2d at 1165. All conflicts in fact must be resolved in favor of the plaintiff for purposes of determining whether a prima facie showing of personal jurisdiction has been made. *Id.; see also Combs,* 886 F.2d at 676; *Moore's* at 12–56.

The question of jurisdiction over a person must be answered by a two-step analysis. *See Dowless,* 800 F.2d at 1306.

First, the court must determine whether the North Carolina long-arm statute confers personal jurisdiction in the court. *Id.; cf. Thompson,* 755 F.2d at 1165–66 ("[I]t is well settled that a defendant is amenable to the personal jurisdiction of a federal court in a diversity case to the extent permitted a state court in the state where the federal court sits" ... (quoting) *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir. 1983)). The Fourth Circuit has held that the statutory provisions be given a liberal construction in order to ensure that North Carolina courts maintain the full jurisdictional powers permissible under federal due process. *See Vishay Intertechnology, Inc. v. Delta International Corp.,* 696 F.2d 1062 (4th Cir.1982).

Second, the court must determine whether the exercise of that statutory power will violate the due process clause of the United States Constitution. *Dowless,* 800 F.2d at 1306 (citing *Vishay Intertechnology,* 696 F.2d at 1064); *see also Combs,* 886 F.2d at 675; *Moore's* at 12–60. The United States Supreme Court has held that the due process clause of the federal constitution requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66

S.Ct. 154, 90 L.Ed. 95 (1945). In other words, a defendant should not be surprised by the institution of a lawsuit in a foreign forum where the defendant has purposefully availed itself of the privilege of conducting activities within the forum state. *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

This Court has consistently held that it should consider the following factors when determining whether minimum contact with the forum state exists: (1) the quantity of the contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state and convenience, and (5) whether the defendant invoked benefits and protections of the law of the forum state. *Richmar Development v. Midland Doherty Services,* 717 F.Supp. 1107, 1118 (W.D.N.C.1989); *Federal Deposit Insurance Corp. v. Kerr,* 637 F.Supp. 828, 839 (W.D.N.C.1986); *Monroe Hardware Co. v. Robinson,* 621 F.Supp. 1166, 1168 (W.D.N.C.1985); *Hardin v. DLF Computer Co., Inc.,* 617 F.Supp. 70, 71 (W.D.N.C.1985).[1] The factors must be analyzed on a "case-by-case basis, determining what is fair, reasonable, and just according to the circumstances". *Richmar Development,* 717 F.Supp. at 1118 (quoting *Vishay Intertechnology, Inc.,* 696 F.2d at 1068). A single transaction in some instances may be sufficient to satisfy the requisite minimum contacts if it gives rise to the liability asserted in the suit. *Id.; see also Burger King*

*Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985).

## IV. DISCUSSION.

In support of its motion, NBS Canada contends that it does not have offices in North Carolina. NBS Canada further contends that it does not carry on any continuous or systematic business in North Carolina. Moreover, NBS Canada states that it does not have any agents or representatives in North Carolina. Therefore, NBS Canada maintains that it has no contacts with the forum state and that dismissal is warranted.

The Court will discuss below the North Carolina long-arm statute and the due process factors that must be considered in determining whether this Court has personal jurisdiction over NBS Canada.

### A. *The North Carolina Long–Arm Statute.*

■ In its response to NBS Canada's motion to dismiss, Plaintiff contends that three (3) provisions of the North Carolina long-arm statute furnish this Court with personal jurisdiction over NBS Canada. A discussion of each provisions follows.

1. Solicitation—N.C.Gen.Stat. § 1–75.4(4)(a).

Section 1–75.4(4)(a) of the North Carolina General Statute provides:

A court of this State having jurisdiction of the subject matter has jurisdiction

---

**1.** Several North Carolina courts have de-emphasized the determination of whether minimum contacts exist. The North Carolina long-arm statute extends to the outer bounds of due process, making analysis under the statute and the due process clause one and the same. *See FDIC v. British–American Corp.,* 726 F.Supp. 622, 629 (E.D.N.C.1989); *Hanes Companies, Inc. v. Ronson,* 712 F.Supp. 1223, 1226 (M.D.N.C.1988) (holding that long-arm statute "[m]akes available to North Carolina courts the full jurisdictional powers permissible under federal due process ... [W]hen a plaintiff relies on (the statute), the question of statutory authority collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process."); *cf. Western Steer–Mom 'N' Pop's, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260,

264 (W.D.N.C.1984). Thus, given the liberal construction of the North Carolina long-arm statute, the prevailing law in North Carolina presumes the existence of in personam jurisdiction. *Southern Case, Inc. v. Management Recruiters International, Inc.,* 544 F.Supp. 403, 405 (E.D.N.C.1982).

It is unclear to the Court whether these cases completely eliminate the need to determine whether minimum contacts with the forum state exists. It does appear to the Court that the Eastern District of North Carolina is correct in concluding that analysis under the long-arm statute and the due process clause is one and the same if the statute extends to the outer bounds of due process. Nonetheless, the Court, for the sake of consistancy with previous published Orders, will examine each of the factors in Section IV.B of this Order.

over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

(4). Local Injury; Foreign Act.—In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

(a). Solicitation or services activities were carried on within this State by or on behalf of the defendant ...

The Fourth Circuit, in a case applying § 1–75.4(4)(a), has held that in order to find personal jurisdiction under this statute a plaintiff (1) must claim that it suffered an injury within North Carolina which injury arose by a defendant's acts outside the state, and (2) must show that the defendant solicited within North Carolina. *See Vishay Intertechnology, Inc.,* 696 F.2d at 1067. In regard to the first requirement, the statute is satisfied if the plaintiff merely *claims* an injury occurred, not that the plaintiff has actually proven the injury. *Id.* As to the second requirement, it is not necessary for the defendant to be physically present in North Carolina to solicit in the state within the meaning of the statute. *Id.* at 1068. Accordingly, where a California defendant sent three (3) letters and made five (5) telephone calls to a North Carolina plaintiff, the Fourth Circuit found that the district court had personal jurisdiction over the defendant pursuant to N.C. Gen.Stat. § 1–75.4(4)(a). *Id.; cf. Dowless,* 800 F.2d at 1306–07 (letter sent by out-of-state defendant to North Carolina plaintiff constituted out-of-state action for purposes for N.C.Gen.Stat. § 1–75.4(4)); *Richmar Development,* 717 F.Supp. at 1117 (stating that numerous phone calls between out-of-state defendant and North Carolina plaintiff constitutes sufficient contact for purposes of personal jurisdiction).

In this case, the Court believes that Plaintiff's uncontested affidavits demonstrate that NBS Canada solicited Plaintiff for services to be performed in North Carolina. The Court believes the evidence thus far presented shows that NBS Canada conducted all negotiations on behalf of NBS Delaware in relation to the lease agreement. *See Affidavit of W.D. Thompson,* filed September 6, 1990 at 2, par. 6 (hereinafter "Thompson Aff."). Plaintiff's representative had several telephone conversations with NBS Canada's Vice President regarding the lease of the equipment. *Id.; see also Affidavit of James N. Mallos,* filed September 6, 1990 at 2, par. 4 (indicating that NBS Canada's President called Plaintiff regarding payoff on the lease agreement). Furthermore, several letters were sent by NBS Canada's Vice President to Plaintiff. *Thompson Aff.* at 2–3, pars. 7, 8, and 11. In addition, the involvement of NBS Canada as guarantor of NBS Delaware's obligations under the lease is indicative of solicitation and service activities that Plaintiff performed in North Carolina due to administrative functions required by the lease agreement. *Id.* at 3, par. 10. Accordingly, the Court concludes that N.C. Gen.Stat. § 1–75.4(4)(a) provides it with in personam jurisdiction over NBS Canada.

2. The North Carolina Business Corporations Act—N.C.Gen.Stat. § 55–145(a)(1) (1982).

Section 1–75.4(2) of North Carolina General Statute provides:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

(2) Special Jurisdiction Statutes.—In any action which may be brought under statutes of this State that specifically confer grounds for personal jurisdiction.

The North Carolina Business Corporations Act is codified at N.C.Gen.Stat. § 55–145(a)(1) (Michie 1982)[2]. That stat-

---

**2.** Recently, the North Carolina Business Corporation Act was substantially amended and recodified to conform with the Revised Model Business Corporation Act of 1984. *See* N.C.Gen.Stat. ch. 55, at introductory comment on page 5 (Michie 1990). The effective date of the amend-

ute, which specifically confers grounds for personal jurisdiction, provides:

(a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

(1) Out of any contract made in this State or to be performed in this State ...

The North Carolina Supreme Court has held that in order for a contract to have been made in North Carolina, the last act to make it binding must have occurred in this state. *See Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 348 S.E.2d 782, 785 (1986); *Telerent Leasing Corp. v. Equity Associates, Inc.*, 36 N.C. App. 713, 717–18, 245 S.E.2d 229 (1978). Therefore, where a plaintiff placed a telephone call from North Carolina to purchase a defendant's product, the statutory jurisdiction requirements of § 55–145(a)(1) were satisfied. *See Collector Cars of Nags Head, Inc. v. G.C.S. Elecs.*, 82 N.C.App. 579, 347 S.E.2d 74 (1986).

As previously discussed, the Court believes that the record indicates that NBS Canada solicited an offer from Plaintiff to lease back the equipment. NBS Canada made several telephone calls to Plaintiff's North Carolina office. More significantly, Plaintiff sent to NBS Canada the leasing agreement for its signature. When NBS Canada officials signed the agreement, NBS Canada caused it to be sent to North Carolina for Plaintiff's signature. *See Thompson Aff.* at 2, par. 7. Hence, the contract was executed in North Carolina.

*See Vishay Intertechnology*, 696 F.2d at 1067 (holding that § 55–145(a) is applicable to a defendant that physically remained in California but who sent communications involving the contract to North Carolina); *Richmar Development*, 717 F.Supp. at 1117.

3. Services Performed in North Carolina—N.C.Gen.Stat. § 1–75.4(5)(a).

Section 1–75.4(5)(a) of the North Carolina General Statute provides:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

(5) Local Services, Good or Contracts. —In any action which:

(a) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff ...

As discussed above, the Court believes that NBS Canada contracted for leasing services that were to be performed by Plaintiff in North Carolina. From the affidavits, it appears to the Court that NBS Canada is an alter-ego of NBS Delaware. While the actual lease agreement was executed in the name of NBS Delaware, the officers of both corporations were identical and the negotiations were conducted from NBS Canada's offices. A parent corporation cannot "[h]ide behind the fiction of a subsidiary and enjoy the benefits of a forum while at the same time avoiding the responsibilities attendant therewith."

ment was July 1, 1990. The former N.C.Gen. Stat. § 145 (Michie 1982) was not brought forward in the amended act. *See* N.C.Gen.Stat. 55–15–10, at comment on page 300 (Michie 1990). Instead, the general long-arm statute, codified at N.C.Gen.Stat. § 1–75.4, is to be applied to in personam questions involving foreign nonresident defendants.

Despite the amendment of the North Carolina Business Corporation Act, that statute is nonetheless applicable in this case. The North Carolina legislature provided a saving provision in the amended act. Section 55–17–03(b) of North

Carolina General Statute (Michie 1990) provides:

Any proceeding or corporate action commenced prior to July 1, 1990, may be completed in accordance with the law then in effect. Because this action was commenced on June 6, 1990 with the filing of the complaint, the Court is required to apply the former Business Corporation Act. Accordingly, the Court believes that N.C.Gen.Stat. § 55–145 (Michie 1982) is applicable to this action. Hereinafter, references to the North Carolina Business Corporation Act are to the former statute.

*FDIC v. British–American Corp.,* 726 F.Supp. 622, 629 (E.D.N.C.1989).

The record also indicates NBS Canada had direct contact with this forum. NBS Canada, as guarantor of NBS Delaware, promised to pay for the services Plaintiff was to perform. Therefore, the Court believes that this section of the long-arm statute provides it with in personam jurisdiction over NBS Canada. *See Monroe Hardware Co.,* 621 F.Supp. at 1167; *see generally Brickman v. Codella,* 83 N.C.App. 377, 350 S.E.2d 164, 167 (1984) (stating that ordinarily guaranty by a nonresident of a debt owed to North Carolina corporation will provide court with jurisdiction).

### 4. Conclusion.

In applying a liberal construction to the North Carolina long-arm statute as directed by the Fourth Circuit in *Vishay Intertechnology,* the Court concludes that it has jurisdiction over NBS Canada based on each of three (3) provisions of the long-arm statute as cited by Plaintiff.

### B. *Due Process Considerations.*

The Court believes that the various sections of the North Carolina long-arm statute conferring this Court with jurisdiction over NBS Canada do not violate the due process clause of the federal constitution. The Court believes that Plaintiff has successfully demonstrated that NBS Canada had minimum contact with this forum. The Court will address each of the minimum contact factors below.

■ The Court believes that the quantity and quality of NBS Canada's contacts with North Carolina are significant. The evidence that Plaintiff has proffered to the Court indicates officers of NBS Canada made repeated phone calls and wrote several letters to Plaintiff in North Carolina regarding the lease of the equipment to NBS Delaware. *See Vishay Intertechnology,* 696 F.2d at 1069; *Monroe Hardware Co.,* 621 F.Supp. at 1168; *Hardin,* 617 F.Supp. at 72 (contacts significant where defendant mailed plaintiff a contract, arranged to have equipment picked up, and engaged in several telephone conversations with plaintiff); *Byrum v. Register's Truck & Equip. Co.,* 32 N.C.App. 135, 231 S.E.2d 39 (1977). The evidence also indicates that NBS Canada owns NBS Delaware. *See Affidavit of Gregory Keoleian,* filed September 6, 1990, at exhibit A on pages 3, 8 and 13.

The Court also believes that the source of the contacts is directly related to this cause of action. *See Richmar Development,* 717 F.Supp. at 1119. Obviously, the action of NBS Canada in contracting to guaranty the obligations of NBS Delaware gave rise in part to Plaintiff's cause of action.

■ The interests of this forum are significant. A foremost interest of North Carolina courts is to address the situation where a foreign-parent corporation establishes a subsidiary to conduct business in North Carolina and the subsidiary subsequently is without sufficient assets to meet its obligations. The North Carolina courts maintain a legitimate interest to provide a forum for plaintiffs who attempt to secure their interests by having a foreign-parent corporation act as a guarantor of its subsidiary's obligations. It is fundamentally unfair for a foreign-parent to be allowed to avoid its role as guarantor by raising an in personam jurisdictional defense when the subsidiary has enjoyed the benefits of doing business in this State. *See FDIC,* 726 F.Supp. at 629.

North Carolina courts also have other interests in this case. North Carolina has an interest in its courts interpreting North Carolina laws. *See Richmar Development,* 717 F.Supp. at 1119. Furthermore, Plaintiff is a North Carolina resident and provides substantial benefits to the North Carolina economy. *See id.; Lane v. WSM, Inc.,* 575 F.Supp. 1246, 1249 (W.D.N.C. 1983) (holding that fewer minimum contacts required when action involves forum state citizen). The injury to Plaintiff in this case occurred in North Carolina. *See Richmar Development,* 717 F.Supp. at 1119. Finally, it cannot be said that Plaintiff is forum shopping. *Id.*

The Court further believes that NBS Canada has invoked the benefits and pro-

tections of North Carolina law. In particular, the Continuing Guaranty Agreement entered into between NBS Canada and Plaintiff states in part:

> This guaranty shall be governed as to validity, interpretation, and effect by the laws and decisions of the State of North Carolina ...

*See Plaintiff's Complaint,* filed June 6, 1990, at exhibit C. When a contract specifies that North Carolina law is to be applied, it is significant for purposes of determining whether a sufficiently substantial contact with the State exists. *See Harrelson Rubber Co. v. Dixie Tire and Fuels Inc.,* 62 N.C.App. 450, 454, 302 S.E.2d 919, 921 (1983). Moreover, the Court believes that NBS Canada should have realized that their contract to guaranty the obligations of NBS Delaware very well might have resulted in being haled into a North Carolina Court if a dispute arose between Plaintiff and NBS Delaware. "[A]fter having intentionally availed itself of the benefits of transacting business with a North Carolina corporation, Midland Doherty (the defendant) cannot now seek to evade the concomitant obligations." *Richmar Development,* 717 F.Supp. at 1120 (citing *Burger King Corp.,* 471 U.S. at 474–75, 105 S.Ct. at 2183–84).

Having examined the relevant due process factors, the Court concludes that NBS Canada has more than sufficient contacts with this forum to satisfy due process considerations. Accordingly, the Court believes that in personam jurisdiction over NBS Canada lies in this Court.

## V. ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that the motion filed by NBS Canada to dismiss for the reason that this Court does not have personal jurisdiction over Defendant National Business Systems, Inc., a Canadian Corporation be, and hereby is, DENIED.