993 F.2d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jacqueline Butler CLARK, Plaintiff-Appellant,
v.
Frederick L. REMARK, M.D., Defendant-Appellee, and
The Dow Chemical Company; Corning Incorporated; Baxter
Healthcare Corporation; Dow Corning Corporation,
Defendants.
 No. 92-1682.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1993
Decided: April 29, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-91-899-A)
 Jerry M. Phillips, Phillips, Beckwith & Hall, Fairfax, Virginia, for Appellant.
 Richard Winston Boone, Sr., Richard W. Boone, P.C., McLean, Virginia, for Appellee.
 John M. Bredehoft, Elaine C. Bredehoft, Charlson & Bredehoft, P.C., Fairfax, Virginia, for Appellant.
 E.D.Va.
 AFFIRMED.
 Before HALL, Circuit Judge, POTTER, United States District Judge for the Western District of North Carolina, sitting by designation, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Jacqueline Butler Clark ("Clark") filed this action against the current Defendant and others and based jurisdiction on diversity of citizenship. 28 U.S.C. § 1332(a). Defendant, Dr. Frederick L. Remark ("Remark"), moved to dismiss for lack of personal jurisdiction. The district court granted the motion and dismissed the case for lack of personal jurisdiction.
 
 
 2
 * Clark's cause of action arose from a breast augmentation surgery that Remark performed on her on July 13, 1976 in Melbourne, Florida (the "1976 surgery"). At the time of the 1976 surgery, both Clark and Remark were residents of the State of Florida. Remark conducted the 1976 surgery at his offices in Melbourne, Florida. Remark has remained a resident of Florida ever since the 1976 surgery. Sometime between the 1976 surgery and December of 1982, Clark immigrated to Virginia and became a resident of that Commonwealth.
 
 
 3
 Clark's complaint addresses two separate, but related incidents. First, Clark-in counts one through four and six through nine-has sued Remark for breach of warranty, negligence, fraud, failure to warn, intentional infliction of emotional distress, negligent infliction of emotional distress, and strict product liability in connection with his sale of the silicone gel-filled breast implants to her at the time the 1976 surgery. Clark has not sued Remark for medical malpractice.
 
 
 4
 Second, Clark has made a second claim of fraud against Remark in count five. This count relates to Clark's communications with Remark in early 1991 (the "1991 communications"). Clark contacted Remark in January of 1991 in an attempt to determine who had manufactured the breast implants that Remark had implanted during the 1976 surgery and to obtain her medical records. Clark became concerned about possible health risks associated with the breast implants after watching a television news show hosted by Connie Chung. During early 1991-in response to Clark's request for information-one of Remark's employees incorrectly told Clark that Dow Corning was the manufacturer of the implants (Heyer-Schulte actually manufactured the implants) and that Clark's medical records had been destroyed.
 
 
 5
 Clark's complaint alleges that Remark intended to mislead her "into believing her implants were benign" by supplying her with the name of the wrong manufacturer and wrongly representing that her medical records had been destroyed. Clark alleges that she detrimentally relied on these representations by bringing suit against Dow Corning and, as a result, has suffered damage in the form of litigation expenses and attorney's fees.
 
 
 6
 Clark initiated the 1991 communications with Remark's office. Clark telephoned Remark's office-from Virginia-on January 3, 1991 "to request a copy of [her] medical records and to find out the manufacturer of [her] implants." Clark reached an answering service; and, one of Remark's office staff returned Clark's call the next day. During that call, Remark's employee informed Clark that Dow Corning manufactured her implants and that her medical records had been destroyed. On January 4, 1991 and again on February 4, 1991, Clark sent letters to Remark that requested Clark's medical records. Remark responded each time by sending a letter to Clark at an Arlington, Virginia address. The two responsive letters are virtually identical; both letters incorrectly inform Clark that Dow Corning manufactured her breast implants.
 
 
 7
 The only other contact between Clark and Remark occurred between December of 1982 and February of 1983 (the"1982 communications"). Clark initiated the 1982 communications. In December Clark wrote Remark to complain of a problem with her breast augmentation. Remark responded in December of 1982 by mailing a letter to Clark's address in Woodford, Virginia. As a result of this correspondence, Clark visited Remark for an office consultation at Remark's offices in Melbourne, Florida in February of 1983. Remark recommended surgery, to which Clark consented, but never had Remark perform.
 
 II
 
 8
 This case presents an issue of specific in personam jurisdiction. Such issues require a two-step inquiry. Dowless v. Warren-Rupp Houdailles, Inc., 800 F.2d 1305, 1306 (4th Cir. 1986). The Court must first determine whether the Virginia long-arm statute will support jurisdiction and then determine whether the exercise of jurisdiction over the person will violate the due process clause of the United States Constitution. Id. In conducting this analysis, the Court is mindful that the Virginia long-arm statute is meant"to extend jurisdiction to the extent permissible under the due process clause [of the United States Constitution]." Id. ( citing Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc., 218 Va. 533, 238 S.E.2d 800, 802 (1977)).
 
 
 9
 Because we hold that Clark has not shown that Remark established "minimum contacts" with the Commonwealth of Virginia, see International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), we need not examine the Virginia long-arm statute in depth.
 
 III
 
 10
 Clark argues that the district court should have taken all her allegations as true. The most significant "allegations" to which Clark is referring are nothing more than conclusory statements from her complaint:
 
 
 11
 11. Remark regularly does and solicits business and engages in other persistent courses of conduct, and derives substan tial revenue from goods used or consumed or services rendered in Virginia.
 
 
 12
 12. Each of the four defendants engaged in a course of conduct outside the Commonwealth of Virginia which caused injury in the Commonwealth of Virginia. In addition, Remark caused tortious injury to Clark by acts and omissions in Virginia.
 
 
 13
 Clark's argument that she need make only a prima facie showing of jurisdiction via the complaint does not mandate that the district court decision be reversed. The burden of establishing personal jurisdiction is borne by the party asserting jurisdiction. Barclays Leasing v. National Business Systems, 750 F.Supp. 184, 186 (W.D.N.C. 1990). Mere allegations of in personam jurisdiction are all that is needed to make a prima facie showing. Dowless v. Warren-Rupp Houdailles, Inc., 800 F.2d 1305, 1307 (4th Cir. 1986). The plaintiff, however, must present affidavits or other evidence if the defendant counters plaintiff's allegations with evidence that minimum contacts do not exist. Barclays Leasing, 750 F.Supp. at 186. Once both parties have presented evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the purpose of determining whether she has made a prima facie showing of jurisdiction. Id.
 
 
 14
 Clark is relying on conclusions made in the complaint, not allegations of jurisdictional facts. Clark has done nothing more than extract the language from the Virginia long-arm statute and place it in her complaint. Compare, Va. Code Ann. §§ 8.01-328.1(A.4 and A.5) with Appendix at 4-5, pp 11-12 (complaint quotes from the statute: "regularly does [and] solicits business," "engages in other persistent courses of conduct," and "derives substantial revenue from goods used or consumed or services rendered in [Virginia]"). Remark has rebutted Clark's allegations with an affidavit. Although Clark has responded with her own declaration, she raises no issues of fact significant to the issue of jurisdiction.
 
 
 15
 As noted above, the 1976 surgery and the 1991 communications, although related, give rise to separate causes of action in Plaintiff's complaint. As to each of these incidents, the normal two-step analysis of the forum state's long-arm statute and the due process analysis merge under Virginia law because the Virginia long-arm statute extends jurisdiction "to the extent permissible under the due process clause." English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990). This Court's finding that the district court's exercise of personal jurisdiction would be inconsistent with the requirements of due process obviates the need to examine the Virginia long-arm statute.
 
 
 16
 Clark has failed to make a prima facie showing of personal jurisdiction, i.e., minimum contacts. As to the initial surgery, neither party disputes that, at the time of the surgery, both parties were residents of Florida and the surgery was performed in Florida. There is no evidence that either Remark or Clark had any contacts with Virginia at the time of the 1976 surgery. Plaintiff then attempts to base personal jurisdiction on a subsequent consultation with Remark after Clark moved to Virginia.
 
 
 17
 In December of 1982, Clark addressed a letter to Remark concerning a problem with her breast implants. Clark, not Remark, suggested that Clark could come to Florida for an examination. Remark's only response was a short letter in which he advised Clark that he would be "happy" to see her in February of 1983 at his offices in Melbourne, Florida. There is no evidence that Remark solicited Clark in Virginia; the undisputed evidence demonstrates that Remark merely responded to Clark's letter. Although Remark clearly communicated with Clark in Virginia, it is equally clear that Clark solicited the letter.
 
 
 18
 Lastly, Plaintiff attempts to attach significance to a series of communications between herself and Remark's agents and employees in Florida during early 1991. Clark's declaration shows that she, not Remark, initiated each of Remark's three communications with her in Virginia (two letters and a phone call). Indeed, Clark specifically and expressly solicited each of the 1991 communications. As such, Clark has not established that Remark has, "purposefully availed himself of the privilege of conducting [business] within[Virginia], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).
 
 
 19
 Whether Remark purposefully directed his activities at Virginia thus invoking the benefits and protections of the law of that Commonwealth is the key issue in this case. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). A plaintiff may not point to her own actions to demonstrate "purposeful availment."
 
 
 20
 The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State.
 
 
 21
 Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-1128 (4th Cir. 1986) (phone calls initiated by plaintiff held not to establish minimum contacts). Remark's activities must have been such that he could "reasonably anticipate being haled into court [in Virginia]." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The focus, therefore, should be on the actions that Remark initiated; his responses to Clark's solicitations are irrelevant insofar as they only addressed Clark's inquiries.
 
 
 22
 Clark has not cited one occasion in which Remark made an unsolicited communication into Virginia. Since "[j]urisdiction may not be manufactured by the conduct of others," id. at 1128, Clark has not made a prima facie showing of personal jurisdiction. The district court's dismissal for lack of personal jurisdiction was proper.
 
 AFFIRMED