**UNIPROP MANUFACTURED HOUSING COMMUNITIES INCOME FUND II, Plaintiff,**

v.

**HOME OWNERS FUNDING CORP. OF AMERICA, Francis Shea and Constance Armstrong, Defendants.**

No. C–C–90–260–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Dec. 14, 1990.

---

6. *See* note 5, *supra.*

7. *See* note 2, *supra.*

Raymond F. Winter, Birmingham, Mich., R. Frank Gray, Raleigh, N.C., for plaintiff.

Karl Adkins, Charlotte, N.C., Paul R. Devin, Peabody & Arnold, Boston, Mass., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER. is before the Court on Defendants' motions, filed October 18, 1990, to dismiss this action against Defendants Francis Shea and Constance Armstrong for lack of personal jurisdiction and to transfer venue pursuant to 28 U.S.C. § 1404(a). On November 29, 1990, Defendants. filed a certificate of service. Apparently, Defendant failed to serve Plaintiff with copies of the motions until November 13, 1990. On December 5, 1990, Plaintiff filed a response to the motion to transfer venue but failed to file a response to the motion to dismiss.

## I. THE PARTIES.

Plaintiff is a Michigan limited partnership. It has never had a principal place of business in North Carolina.

Defendant Home Owners Funding Corp. of America (hereinafter "HOFCA") is a Massachusetts corporation with a branch office in Charlotte, North Carolina. HOFCA's parent corporation was Home Owners Savings Bank FSB (hereinafter "Home Owners"), a Massachusetts corporation. Home Owners has been under the conservatorship of the Resolution Trust Corporation (hereinafter "RTC") from April 27, 1990 to September 7, 1990, and under receivership under the RTC from September 7, 1990 to present.

Defendant Francis Shea (hereinafter "Shea") is a citizen of Massachusetts. From early March, 1990, she held the position of Senior Executive Vice–President and Chief Operating Officer of Home Owners.

Defendant Constance Armstrong (hereinafter "Armstrong") is a citizen of Massachusetts. He has held the position of Senior Vice President and has been an officer with Home Owners since July, 1986. From February 25, 1988 to October 25, 1989, Armstrong was on the Board of Directors of HOFCA.

## II. FACTUAL BACKGROUND.

On August 15, 1990, Plaintiff filed an amended complaint. The complaint reveals that this action is primarily a dispute that arose as a result of HOFCA's failure to fulfill a draw request submitted by Plaintiff. On January 12, 1990, Plaintiff and HOFCA entered into a loan agreement that required HOFCA to provide loan advances within fifteen (15) days of Plaintiff making such a request. On June 11, 1990, Plaintiff made a request for a draw in the amount of $474,881.05. However, HOFCA has failed to fulfill that request despite Plaintiff's contention that it has fully complied with all requirements of the loan agreement.

Plaintiff claims that HOFCA's failure to comply with the draw request has caused it loss of three months rental income in excess of $41,000.00 and the loss of future rental income rental income estimated at $1,475,000.00, allegedly caused by Plaintiff's inability to purchase and place rental homes on two of its properties due to HOFCA's failure to advance the funds. Plaintiff further claims that it has suffered a loss of property values caused by lost rentals in excess of $3,400,000.00. Plaintiff also believes that it has incurred $230,000.00 damages resulting from the loss of 41 manufactured homes which Plaintiff was unable to purchase as a result of HOFCA failing to comply with the loan agreement. Moreover, Plaintiff contends that it is entitled to receive the outstanding draw request of $474,881.05. Finally, Plaintiff claims an undetermined amount of relief resulting from its damaged business reputation and the disruption of existing business relationships.

Plaintiff seeks relief based on three (3) claims. First, Plaintiff claims that Defendants breached the loan agreement. Second, Plaintiff claims that HOFCA knew or should have known when it entered into the loan agreement that Home Owners was experiencing financial difficulties, and would be unable to meet the obligations under the agreement. Third, Plaintiff claims that Defendants' actions have been malicious and wanton displaying a reckless indifference to Plaintiff's rights under the agreement, and thus, Defendants are liable for punitive damages.

## III. LEGAL CONCLUSIONS.

### A. *Motion to Dismiss this Action as to Defendants Shea and Armstrong.*

In support of the motion to dismiss the action as to the individual Defendants, Shea and Armstrong claim that Plaintiff has failed to establish that this Court has personal jurisdiction over them. Accordingly, Shea and Armstrong argue that dismissal is warranted under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

#### 1. Standard of Review.

Rule 12(b)(2) of the Federal Rules of Civil Procedure is applicable to motions to dismiss for lack of jurisdiction over a person. The burden of establishing personal

jurisdiction rests with the party asserting it. *See* 2A *Moore's Federal Practice*, Par. 12.07[2.–2] at 12–55 (1990) (hereinafter "Moore's"). However, if the court decides a motion to dismiss for lack of jurisdiction over a person without an evidentiary hearing based only on the written submissions of the parties, the party asserting jurisdiction need only make a prima facie showing that jurisdiction exists. *Id.* at 12–56; *see Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989); *Dowless v. Warren–Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir.1986); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982). Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing. *See Dowless*, 800 F.2d at 1307.

The allegations of the complaint, unless controverted by opposing affidavits, must be taken as true. *See Thompson*, 755 F.2d at 1165. There is no requirement that the pleadings be verified and no lack of credibility will be implied by the absence of a verification of plaintiff's complaint. *See Dowless*, 800 F.2d at 1307 (citing *Bush v. BASF Wyandotte Corp.*, 64 N.C.App. 41, 45, 306 S.E.2d 562, 565 (1983)). The court may accept affidavits, interrogatories, depositions or any other legitimate method of discovery. *See Thompson*, 755 F.2d at 1165. All conflicts in fact must be resolved in favor of the plaintiff for purposes of determining whether a prima facie showing of personal jurisdiction has been made. *Id.; see also Combs*, 886 F.2d at 676; *Moore's* at 12–56.

The question of jurisdiction over a person must be answered by a two step analysis. *See Dowless*, 800 F.2d at 1306.

First, the court must determine whether the North Carolina long-arm statute confers personal jurisdiction in the court. *Id.; cf. Thompson*, 755 F.2d at 1165–66 ("[I]t is well settled that a defendant is amenable to the personal jurisdiction of a federal court in a diversity case to the extent permitted a state court in the state where the federal court sits" ... (quoting) *DeMelo v. Toche Marine, Inc.*,

711 F.2d 1260, 1264 (5th Cir.1983)). The Fourth Circuit has held that the statutory provisions be given a liberal construction in order to ensure that North Carolina courts maintain the full jurisdictional powers permissible under federal due process. *See Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062 (4th Cir. 1982).

Second, the court must determine whether the exercise of that statutory power will violate the due process clause of the United States Constitution. *Dowless*, 800 F.2d at 1306 (citing *Vishay Intertechnology*, 696 F.2d at 1064; *see also Combs*, 886 F.2d at 675; *Moore's* at 12–60). The United States Supreme Court has held that the due process clause of the federal constitution requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In other words, a defendant should not be surprised by the institution of a lawsuit in a foreign forum where the defendant has purposefully availed itself of the privilege of conducting activities within the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

This Court has consistently held that it should consider the following factors when determining whether minimum contact with the forum state exists: (1) the quantity of the contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state and convenience, and (5) whether the defendant invoked benefits and protections of the law of the forum state. *Richmar Development v. Midland Doherty Services*, 717 F.Supp. 1107, 1118 (W.D.N.C.1989); *Federal Deposit Insurance Corp. v. Kerr*, 637 F.Supp. 828, 839 (W.D.N.C.1986); *Monroe Hardware Co. v. Robinson*, 621 F.Supp. 1166, 1168 (W.D.N.C.1985); *Hardin v. DLF Computer Co.*,

*Inc.,* 617 F.Supp. 70, 71 (W.D.N.C.1985).[1] The factors must be analyzed on a "case-by-case basis, determining what is fair, reasonable, and just according to the circumstances". *Richmar Development,* 717 F.Supp. at 1118 (quoting *Vishay Intertechnology, Inc.,* 696 F.2d at 1068). A single transaction in some instances may be sufficient to satisfy the requisite minimum contacts if it gives rise to the liability asserted in the suit. *Id.; see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985).

## 2. The North Carolina Long–Arm Statute.

In this case, Plaintiff has failed to assert in the complaint which provision of the North Carolina long-arm statute it relies on to invoke the Court's jurisdiction over Shea and Armstrong. The Court believes that the best argument to be made in invoking in personam jurisdiction under the long-arm statute is the provision found at N.C. Gen.Stat. § 1–75.4(4)(a). That statute provides:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

(4). Local Injury; Foreign Act.—In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

(a). Solicitation or services activities were carried on within this State by or on behalf of the defendant ...

The Fourth Circuit, in a case applying § 1–75.4(4)(a), has held that in order to find personal jurisdiction under this statute a plaintiff (1) must claim that it suffered an injury within North Carolina which injury arose by a defendant's acts outside the state, and (2) must show that the defendant solicited within North Carolina. *See Vishay Intertechnology, Inc.,* 696 F.2d at 1067. In regard to the first requirement, the statute is satisfied if the plaintiff merely *claims* an injury occurred, not that the plaintiff has actually proven the injury. *Id.* As to the second requirement, it is not necessary for the defendant to be physically present in North Carolina to solicit in the state within the meaning of the statute. *Id.* at 1068. Accordingly, where a California defendant sent three (3) letters and made five (5) telephone calls to a North Carolina plaintiff, the Fourth Circuit found that the district court had personal jurisdiction over the defendant pursuant to N.C. Gen.Stat. § 1–75.4(4)(a). *Id.; cf. Dowless,* 800 F.2d at 1306–07 (letter sent by out-of-state defendant to North Carolina plaintiff constituted out-of-state action for purposes for N.C.Gen.Stat. § 1–75.4(4)); *Richmar Development,* 717 F.Supp. at 1117 (stating that numerous phone calls between out-of-state defendant and North Carolina plain-

**1.** Several North Carolina courts have deemphasized the determination of whether minimum contacts exist. The North Carolina long-arm statute extends to the outer bounds of due process, making analysis under the statue and the due process clause one and the same. *See FDIC v. British–American Corp.,* 726 F.Supp. 622, 629 (E.D.N.C.1989); *Hanes Companies, Inc. v. Ronson,* 712 F.Supp. 1223, 1226 (M.D.N.C.1988) (holding that long-arm statute "[m]akes available to North Carolina courts the full jurisdictional powers permissible under federal due process ... [W]hen a plaintiff relies on (the statute), the question of statutory authority collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process."); *cf. Western Steer–Mom 'N' Pop's,*

*Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 264 (W.D.N.C.1984). Thus, given the liberal construction of the North Carolina long-arm statute, the prevailing law in North Carolina presumes the existence of in personam jurisdiction. *Southern Case, Inc. v. Management Recruiters International, Inc.,* 544 F.Supp. 403, 405 (E.D.N.C.1982).

It is unclear to the Court whether these cases completely eliminate the need to determine whether minimum contacts with the forum state exists. It does appear to the Court that the Eastern District of North Carolina is correct in concluding that analysis under the long-arm statute and the due process clause is one and the same since the statute extends to the outer bound of due process.

tiff constitutes sufficient contact for purposes of personal jurisdiction).

In this case, the Court believes that Plaintiff has failed to carry its minimal burden in establishing in personam jurisdiction. The complaint in this matter only refers to Shea and Armstrong in two (2) instances. Paragraph 2(f) of the Amended Complaint states:

Individual Defendants, Francis Shea and Constance Armstrong, are each citizens of states other than the State of Michigan.

Paragraph 20 of the Amended Complaint states:

The false and fraudulent representations concerning Defendant HOFCA's financial ability were made with the express and/or implied knowledge of Francis Shea, Constance Armstrong and other of Defendant HOFCA's corporate officers.

As previously noted, Plaintiff has not responded to Defendants' motion to dismiss and has not filed affidavits that indicate what if any contacts Shea and Armstrong had with the forum state of North Carolina.

Shea and Armstrong have filed affidavits that indicate that neither has ever travelled to HOFCA's North Carolina office. Although both are vice presidents of Home Owners, only Armstrong was an officer of HOFCA. However, his association with HOFCA ended in October 25, 1989. The loan agreement in this case was entered on January 12, 1990. Therefore, neither of the individual Defendants were involved or had knowledge of the loan agreement until after it was signed. In fact, the affidavits indicate that Shea and Armstrong did not have any knowledge of the agreement until June, 1990 when a request for funding came before Home Owners' Credit Review Committee.

The Court believes that Plaintiff has failed to demonstrate that Shea and Armstrong had any involvement in HOFCA's decision to refuse to honor the draw request. The only shred of information before the Court regarding the role of Shea and Armstrong in this dispute is contained in paragraph 20 of the Amended Complaint. However, the assertion that Shea and Armstrong made false representations of the financial condition of HOFCA are countered by the affidavits of Shea and Armstrong which indicate that neither knew of the existence of the agreement before June, 1990. Therefore, the Court must discount the assertions made in paragraph 20 of the Amended Complaint. Although the Court can speculate as to some possible involvement by Shea and Armstrong as vice presidents of Home Owners in the decision not to fund the draw request, the burden on Plaintiff in establishing in personam jurisdiction requires more than conjecture on the Court's part. Accordingly, the Court believes that Plaintiff has failed to establish that the North Carolina long-arm statute confers jurisdiction on this Court over Shea and Armstrong.

3. Due Process Considerations.

Because Plaintiff must establish that a provision of the long-arm statute confers jurisdiction as well as demonstrate that Shea and Armstrong had minimal contacts with North Carolina, the Court believes that Plaintiff's failure to meet the first prong of the test alleviates the need by the Court to consider the due process considerations. The Court believes that Plaintiff has failed to establish jurisdiction lies with this Court over Shea and Armstrong. Therefore, the Court will grant Defendants' motion to dismiss this action as to Defendants Shea and Armstrong.

### B. Defendants' Motion for Transfer of Venue.

The Court has found *supra.* that Defendants' motion to dismiss this action as to Defendants Shea and Armstrong is meritorious. Therefore, the Court will only address whether venue as to Defendant HOFCA is appropriate in this district.

1. Standard of Review.

Title 28, United States Code, Section 1404(a) is applicable to motions involving change of venue. That statute provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action

to any other district or division where it might be brought.

It is well established that the moving party carries the burden of establishing that a case should be transferred. *See generally* 1A *Moore's Federal Practice*, Par. 0.345[5] at 4360 (Matthew Bender 1990) (hereinafter "Moore's"). This Court has consistently found that the burden is a heavy one.[2] The decision to transfer is left to the sound discretion of the trial court. *Moore's* at 4362; *see also In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir.1984); *Bates*, 624 F.Supp. at 227 (citing *Akers v. Norfolk & Western Railway Co.*, 378 F.2d 78, 80 (4th Cir.1967)).

■ In determining whether to transfer a case, the plain language of the statute requires that the Court balance the convenience to the parties and witnesses, as well as the interests of justice. Because the movant assumes a heavy burden when making a motion to transfer, the motion will not be granted if a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered. *See Phillips*, 627 F.Supp. at 727. Moreover, the Court has long held that a court ordinarily should accord the plaintiff's choice of forum great weight. *See Commercial Equipment Co.*, 738 F.Supp. at 976 (providing extensive authority); *McDevitt & Street Co.*, 737 F.Supp. at 353 (same). "[A] plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed". *Datasouth*, 719 F.Supp. at 451 (citations omitted).

The district court should consider the following factors when deciding if a matter will be transferred:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict of laws.

*See Commercial Equipment Co.*, 738 F.Supp. at 977; *McDevitt & Street Co.*, 737 F.Supp. at 354. The analysis of these factors is qualitative, not merely quantitative. *Id.*

2. Analysis of the Factors.

In conducting the balancing test required in deciding whether to transfer a matter, the Court has considered the factors cited above. A discussion of each factor in the order previously cited follows.

*(1) Plaintiff's initial choice of forum.*

■ As previously noted, the Plaintiff's choice of forum is of utmost importance. This Court has stated in the past:

[I]t is "black letter law", that "a plaintiff's choice of a proper forum is a paramount consideration in any determination

---

**2.** *See Commercial Equipment Co. v. Barclay Furniture Co.*, 738 F.Supp. 974, 977 (W.D.N.C.1990); *McDevitt & Street Co. v. Fidelity and Deposit Co.*, 737 F.Supp. 351, 353 (W.D.N.C.1990); *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F.Supp. 446, 451 (W.D.N.C.1989); *Phillips v. S. Gumpert Co. Inc.*, 627 F.Supp. 725, 726–27 (W.D.N.C.1986); *Bates v. J.C. Penney Co.*, 624 F.Supp. 226, 227 (W.D.N.C.1985); *DMP Corp. v. Fruehauf Corp.*, 617 F.Supp. 76, 77 (W.D.N.C.1985); *Western Steer—Mom 'N' Pops, Inc. v. FMT Investments, Inc.*, 578 F.Supp. 260, 265 (W.D.N.C.1984).

of a transfer request, and that choice ... should not be lightly disturbed."

*Western Steer*, 578 F.Supp. at 265 (citations omitted). While some courts have placed less emphasis on choice of forum, this Court has clearly not been one of those courts. *See generally* Wright, Miller, and Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3848 at 378–82 (West 1986) (listing cases) (hereinafter "Fed. Practice"). Contrary to HOFCA's contentions that the Court should give diminished weight to this factor, the Court believes that the cases cited by HOFCA supporting the proposition that choice of forum is not an important consideration are in direct conflict with established precedent of this district. *See McDevitt & Street*, 737 F.Supp. at 355 (holding that choice of forum clearly favors position of the plaintiff); *Commercial Equipment*, 738 F.Supp. at 977 (concluding that Court must give plaintiff's initial choice of forum considerable weight in determining the appropriate place for the adjudication of dispute); *Datasouth*, 719 F.Supp. at 451 (choice of forum factor weighs against transfer). It is not enough for HOFCA, in attacking this factor, to merely state that Plaintiff resides in Michigan instead of this district. *Id.* at 358. Accordingly, the Court concludes that Plaintiff's choice of forum weighs against transferring this matter.

### (2) The residence of the parties.

▮ The Court believes that this factor slightly favors HOFCA. Plaintiff, a citizen of Michigan, will be inconvenienced if this matter proceeds in either this district or Massachusetts. There is nothing in the record to indicate that the level of inconvenience will be any greater if the matter is transferred to Massachusetts. Obviously, HOFCA would be less inconvenienced if this matter is transferred.

### (3) The relative ease of access of proof.

▮ The Court believes that this factor favors neither party. HOFCA argues that documentary evidence surrounding the decision of Home Owners to not advance the draw to Plaintiff is located in its Massachusetts office. HOFCA further argues that any relevant documentary evidence in HOFCA's North Carolina office can easily be transported to Massachusetts.

The Court believes that the affidavit of B. Garrison Ballenger, Vice President and Legal Counsel for Home Owners, undermines the arguments advanced by HOFCA. In paragraph 5 of the affidavit, Mr. Ballenger states that "[A]ny documentary evidence that HOFCA would likely rely on in this action *has been forwarded to HOFCA's office in Burlington, Massachusetts*" (emphasis added). The Court believes that this statement indicates that the documentary evidence was at one time in HOFCA's Charlotte office, but has since been forwarded to Massachusetts. The Court is reluctant to allow Plaintiff's choice of forum to be defeated by HOFCA choosing to forward relevant documentary evidence out of this district. Therefore, the Court concludes that any burden incurred regarding this factor should be borne by HOFCA.

### (4) The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses.

▮ The Court believes that this factor favors Plaintiff. HOFCA argues that many of the witnesses including Defendants Shea and Armstrong are Massachusetts citizens. However, the Ballenger affidavit once again undermines this argument. In paragraph 6, Mr. Ballenger lists the residences of nine (9) potential witnesses. Three (3) of those witnesses are located outside of North Carolina with the remaining six (6) potential witnesses being citizens of North Carolina. Accordingly, the Court believes that contrary to HOFCA's representations, many of the witnesses in this action are North Carolina citizens. Compulsory process of these witnesses would be unavailable to Plaintiff if this matter was transferred.

### (5) The possibility of a view.

This factor does not appear to be applicable in this matter, and thus, the factor favors neither party.

*(6) The enforceability of a judgment, if obtained.*

This factor does not appear to be applicable in this matter, and thus, the factor favors neither party.

*(7) The relative advantages and obstacles to a fair trial.*

The Court believes that this argument favors neither party. HOFCA argues that the question of whether this Court has personal jurisdiction over Defendants Shea and Armstrong exists. This argument is now moot in light of the Court's decision *supra* to dismiss this action as to Shea and Armstrong.

*(8) Other practical problems that make a trial easy, expeditious, and inexpensive.*

■ The Court believes that this factor favors neither party. HOFCA argues that it will incur less expense if this matter is tried in Massachusetts. However, the Court believes that any expense incurred in transporting documents are a direct result of HOFCA causing those documents to be forwarded from its Charlotte office to Massachusetts. Moreover, six (6) of the witnesses HOFCA plans on calling are North Carolina residents. Only two (2) of the witnesses listed in the Ballenger affidavit are Massachusetts citizens. Accordingly, the Court disagrees with HOFCA's assessment that the expense incurred in trying this matter in North Carolina will be substantially greater to it. The expense to Plaintiff appears to be the same if the matter is tried in Massachusetts. Therefore, the Court believes that Plaintiff's choice of forum should not be defeated by this factor.

*(9) The administrative difficulties of court congestion.*

■ The Court believes that this factor clearly favors this matter not being transferred. A comparison of both districts demonstrates that this district has fewer civil matters filed, fewer pending cases, more completed trials, and quicker median times from filing to disposition and issue to trial. Moreover, the comparison indicates that this district disposed of cases in almost one-half the time it takes the District of Massachusetts. The comparison is as follows:

U.S. DISTRICT COURT—JUDICIAL WORKLOAD PROFILE (1990)

|  | W.D.N.C. | D. Mass. |
|---|---|---|
| Civil filings/Judge | 238 | 344 |
| Pending cases/Judge | 322 | 650 |
| Completed trials/Judge | 52 | 29 |
| Median time (months) from filing to disposition | 9 | 13 |
| Median time (months) from issue to trial | 15 | 30 |

*See* Administrative Office of the United States Courts, *Federal Court Management Statistics, 1990*, at 38 and 68. Accordingly, the Court believes that this factor weighs in favor of not transferring the matter.

*(10) The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action.*

■ The Court believes that this factor strongly favors Plaintiff. It is undisputed that North Carolina is a correct forum for venue because the loan agreement was entered into here. Accordingly, if the agreement was breached or HOFCA engaged in

fraudulent activity, a court in this jurisdiction has a substantial interest in this action.

An even more compelling interest for a North Carolina court is the fact that the contract provides that North Carolina is the choice of forum for litigating disputes. The agreement provides in pertinent part at Paragraph 12.2:

> ... As part of the consideration for new value this day received, the borrower hereby consents to the jurisdiction of any state or federal court located within the state of North Carolina ... Nothing in this section shall affect the right of lender to serve legal process in any other manner permitted by law or affect the right of lender to bring any action or proceeding against the borrower or its property in the courts of any other jurisdiction that has jurisdiction over borrower or its property.

As Plaintiff notes in its response, this paragraph is typed in all capital letters and is boldfaced. Moreover, HOFCA is the party that drafted the agreement.

■ HOFCA bargained in good faith for North Carolina courts to be the forum of choice. The Court agrees with Plaintiff that it is disingenuous for HOFCA to now come before this Court and request that the matter be transferred when HOFCA has received exactly what it bargained for. Moreover, the Court believes that ordinarily parties that include a forum selection clause in a contract should expect that the action will be brought in the bargained for district.

While the Court recognizes that it has the discretion under 28 U.S.C. § 1404(a) to transfer this matter to a more convenient location, the Court believes that the inclusion of a forum selection clause weighs heavily against HOFCA's argument that Massachusetts is a more convenient location. *See Stewart Organization, Inc. v. Richo Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) ("[I]n its resolution of the 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the

parties' expressed preference for that venue, and the fairness of transfer in light of the forum selection clause and the parties' relative bargaining power"). If Massachusetts was a more convenient forum, the Court does not believe that HOFCA would have set forth North Carolina as the forum of choice in its draft of the agreement.

### (11) The avoidance of unnecessary problems with conflict of laws.

The Court does not believe that this factor favors either party. While it is true that HOFCA bargained for the application of North Carolina law, it appears that this action will involve the relatively straight forward application of common law fraud and contract law. Accordingly, the Court believes that the District Court in Massachusetts would be able to apply North Carolina law as readily as this Court.

### 3. Conclusion.

■ Although the Court is more concerned with the qualitative nature of the factors rather than the quantitative nature of the factors, the Court believes that the factors fall into three categories—factors that favor neither party (factor numbers 3, 5, 6, 7, 8 and 11); a factor that is slightly favorable to HOFCA (factor number 2); and factors that are favorable to Plaintiff (factor numbers 1, 4, 9 and 10).

The Court believes that the balancing of factors demonstrates that six (6) factors essentially failed significantly to impact the Court's decision. Therefore, these factors do not tip the balance in favor of either party. *See Commercial Equipment Co.,* 738 F.Supp. at 980. Four (4) factors favor Plaintiff and one (1) factor slightly favors HOFCA.

After a careful examination of these factors, the Court concludes that it would be equally convenient to try this matter in this district as in the District of Massachusetts. Therefore, HOFCA has demonstrated only that a transfer of this case merely would shift the inconvenience from one party to another. *See Id.; DMP Corp.,* 617 F.Supp. at 77. The case law of this district provides that a failure by the movant to make more than a showing that the incon-

venience would shift constitutes a failure by the movant to carry the heavy burden imposed on him under the transfer statute. Thus, the Court does not believe that the interests of justice justify HOFCA's transfer motion.

Based on the review of relevant factors, the Court concludes that this matter should not be transferred to the District of Massachusetts.

## IV. REQUEST FOR A HEARING.

■ Defendants have requested that this Court conduct a hearing on these matters. The Court believes that the written record is sufficient for the Court to determine the correct disposition. Therefore, the Court does not believe that a hearing is necessary, and Defendant's request will be denied.

## V. ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that Defendants' motion to dismiss this action against Defendants Francis Shea and Constance Armstrong for lack of personal jurisdiction be, and hereby is, GRANTED.

IT IS FURTHER ORDERED that Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendants' motion for the Court to conduct a hearing on these matters be, and hereby is, DENIED.