**D.P. RIGGINS & ASSOCIATES, INC., Plaintiff,**

v.

**AMERICAN BOARD COMPANIES, INC., Carolina Assemblies, Inc., and U.S. Assemblies, Inc., Defendants.**

**No. C–C–91–358–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

June 4, 1992.

206

Frank W. Snepp, C. Ralph Kinsey, Jr., Underwood Kinsey Warren & Tucker, Charlotte, N.C., for plaintiff.

G. Peter Van Zandt, Binghamton, N.Y., John E. Hodge, Jr., Hicks Hodge & Cranford, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Motions of Defendants, filed 14 November 1991, to Dismiss or Transfer. On 20 December 1991, Defendants filed a Memorandum in Support of their earlier-filed Motions. Subsequently, on 3 January 1992, Plaintiff filed a Memorandum in Response to the Motions of Defendant. On 21 January 1992, Defendants filed a Reply to this Response. Further, on 3 February 1992, Plaintiff filed supplemental evidence in support of its opposition to Defendant's Motions. Finally, on 6 February 1992, Defendants filed a Response to the supplemental evidence of Plaintiff. Where pertinent, these Motions are supported by affidavits and relevant exhibits.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff, D.P. Riggins & Associates, Inc. (hereinafter "Riggins"), is a North Carolina Corporation with its principal office and place of business in Mecklenburg County, North Carolina. Affidavit of David P. Riggins at 1. Riggins acts as a sales representative for a variety of manufacturers. *Id.* The Defendant American Board Companies, Inc. (hereinafter "American Board") is a New York Corporation with its principal office and place of business in Vestal, Boone County, New York. Complaint of Plaintiff at 1. The Defendant Carolina Assemblies, Inc. (hereinafter "Carolina Assemblies") is a South Carolina Corporation with its principal office and place of business in Myrtle Beach, Horry County, South Carolina. *Id.* The Defendant U.S. Assemblies, Inc. (hereinafter "U.S. Assemblies") is a Pennsylvania Corporation with its principal office and place of business in Hallstead, Susquehanna County, Pennsylvania. *Id.*

American Board was incorporated under the name Chenango Affiliates, Inc. in 1987. In January of 1988, its name became Chenango Industries, Inc. and in December of 1990, it again changed its name to American Board Companies, Inc. *Id.* Carolina Assemblies was incorporated under the name Chenango Affiliates, South Inc. in 1987. In January of 1988, it changed its name to Chenango Industries South, Inc. and in December of 1990 it changed its name to Carolina Assemblies, Inc. *Id.;* Answer of Defendants at 2. U.S. Assemblies was incorporated under the name of Chenango Industries of Pennsylvania, Inc. in 1987. In December of 1990, it changed its name to U.S. Assemblies, Inc. Complaint of Plaintiff at 2.

Each of the Defendants manufactures items used in the electronics industry. American Board manufactures printed circuit boards. Affidavit of Thomas A. Marzo at 2. Carolina Assemblies manufactures cables and harnesses and U.S. Assemblies manufactures electronic assemblies. *Id.* Beginning in November of 1986, Plaintiff served as a sales representative for each of these companies in North Carolina and other southern states. Affidavit of David P. Riggins at 2. In January of 1988, James Matthews purchased the Chenango companies. *Id.* James Matthews is the sole or majority shareholder of a variety of concerns, including The Matco Group, Inc., of which American Board, Carolina Assemblies, and U.S. Assemblies are now members. Complaint of Plaintiff at 4; Answer of Defendants at 4. Subsequently, on 12 January 1988, Plaintiff entered into a new Sales Representation Agreement (hereinafter the "Matthews Agreement"). Complaint of Plaintiff at 6, *see also* Exhibit D to Complaint of Plaintiff; Answer of Defendant at 5. This Agreement was merely an addendum to the original 1986 Sales Representation Agreement entered into by Plaintiff and Chenango Industries. In September of 1989, officers of Plaintiff and an officer of Defendant American Board (then Chenango Industries, Inc.) agreed to a modification of the Matthews Agreement. Complaint of Plaintiff at 7; Answer of Defendants at 6. That modification, dated 13 September 1989, was signed by an officer of Plaintiff on 6 October 1989 and by an officer of Defendant American Board on 4 October 1989. Exhibit E to Complaint of Plaintiff. On 25 April 1990, Atlantic Electronics, a member of the Matco Group,

notified Plaintiff that it was then terminating the Matthews Agreement. Complaint of Plaintiff at 8, *see also* Exhibit F to Complaint of Plaintiff; Answer of Defendant at 6.

As a result of this termination, in September of 1991, Plaintiff brought suit against Defendants in the Superior Court of Mecklenburg County, North Carolina. Plaintiff's Complaint set forth three alternative claims for relief: breach of contract, recovery as a "Sales Representative" from a "Principal" pursuant to N.C.Gen.Stat. § 66–190(3) and (4), and *Quantum Meruit.* On 18 October 1991, Defendants removed this action to this Court. In addition, on 14 November 1991, Defendants answered and filed the Motions now before this Court. In the interest of clarity, the Court will address each of these Motions separately.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

 In evaluating a question of personal jurisdiction, this Court must perform a two-step analysis. *Vishay Intertechnology, Inc. v. Delta Intern. Corp.*, 696 F.2d 1062, 1064 (4th Cir.1982). The Court must first determine whether the North Carolina long-arm statute confers jurisdiction upon this Court. *Id.; Barclays Leasing, Inc. v. National Business Systems*, 750 F.Supp. 184, 186 (W.D.N.C.1990). Then, the Court must ensure that exercise of that statutory power does not violate the due process clause of the United States Constitution. *Id.* However, in practice, consideration of due process collapses into the Court's interpretation of the long-arm statute. *General Latex and Chemical Corp. v. Phoenix Medical Tech.*, 765 F.Supp. 1246, 1249 n. 1 (W.D.N.C.1991); *FDIC v. British–American Corp.*, 726 F.Supp. 622, 629 (E.D.N.C. 1989). The burden of establishing personal jurisdiction is borne by the party asserting jurisdiction. *Barclays Leasing*, 750 F.Supp. at 186. However, absent an evidentiary hearing, the party asserting jurisdiction satisfies its burden merely by making a prima facie showing that jurisdiction exists. *Id.* Further, mere allegations of in personam jurisdiction are all that is needed to make the required prima facie showing. *Dowless v. Warren–Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir.1986). The Court must accept allegations contained in the complaint as true, unless those allegations are controverted by affidavits. *Barclays Leasing*, 750 F.Supp. at 186. Similarly, factual conflicts must be resolved in favor of the plaintiff. *Id.*

In pertinent part, the North Carolina long-arm statute provides:

A Court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

\* \* \* \* \* \*

(2) Special Jurisdictional Statutes.—In any action which may be brought under statutes of this State that specifically confer grounds for personal jurisdiction.

\* \* \* \* \* \*

(5) Local Services, Goods or Contracts.—In any action which:
(a) Arises out of a promise, made anywhere to the plaintiff ... by the defendant to perform services within this State *or to pay for services to be performed in this State by the plaintiff;* or
(b) Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant.

N.C.Gen.Stat. § 1–75.4(5)(a) & (b) (1983). Plaintiffs assert that this Court may exercise personal jurisdiction over Defendants pursuant to these statutory provisions. Further, Plaintiffs point the Court to North Carolina General Statute § 66–192. That statute provides in pertinent part: "A principal[1] who is not a resident of this State

---

1. "Principal" is defined as:
 a person who does not have a permanent or fixed place of business in this State and who:

(a) Manufactures, produces, imports, or distributes a tangible product for sale at wholesale;

who contracts with a sales representative[2] to solicit orders in this State shall be subject to personal jurisdiction as provided in G.S. 1–75.4." N.C.Gen.Stat. § 66–192(c) (1991). Plaintiff contends correctly that this is a "Special Jurisdictional Statute[ ]" as that term is used in North Carolina General Statute § 1–75.4. Given the undisputed fact that Plaintiff served as a sales representative for Defendants, Plaintiff contends that § 66–192(c) serves as an additional jurisdictional basis for this Court.

Defendants argue there is no basis upon which this Court can assert personal jurisdiction over Defendants. In brief, Defendants argue that Defendants had insufficient contacts with the State of North Carolina to support personal jurisdiction, that § 66–192(c) is inapplicable to this action, and that the contract entered into by the Parties dictates that any dispute arising from that contract be tried in New York.

### 1. The North Carolina Long–Arm Statute

■ Defendants argue correctly that the due process clause of the United States Constitution requires that a defendant have certain minimum contacts with the forum state so that exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (minimum contacts required). Here, Defendants argue they have not had those required minimum contacts.

As noted above, in analyzing the jurisdictional arguments of Defendants, this Court must first determine whether the North Carolina long-arm statute confers jurisdiction upon this Court. That statute provides in part that a North Carolina court has jurisdiction in any action over an out-of-state defendant where that defendant has promised to pay for services performed by the plaintiff within this state. N.C.Gen. Stat. § 1–75.4(5)(a) (1983). Further, that statute provides that a North Carolina court has jurisdiction over an out-of-state defendant in any action arising out of "services actually performed for the defendant by the plaintiff within this State if such performance was authorized or ratified by the defendant." N.C.Gen.Stat. § 1–75.-4(5)(b) (1983).

Here, Plaintiff and Defendants entered into a Sales Representation Agreement whereby Plaintiff agreed to act as a Sales Representative for Defendants in this and other states. Affidavit of David P. Riggins; Affidavit of Thomas A. Marzo. In return, Defendants agreed to pay commissions to Plaintiff. *Id.* As such, Defendants are square within the provisions of § 1–75.4(5)(a) & (b), a statute that is to be liberally construed. *Southern Case, Inc. v. Management Recruiters Int'l, Inc.*, 544 F.Supp. 403, 405 (E.D.N.C.1982). Accordingly, that statute properly confers upon this Court jurisdiction over Defendants.

Moreover, exercise by this Court of personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. These Defendants, all related corporations and members of the Matco Group, had contacts both with Plaintiff and North Carolina customers. Although the Defendants have no offices, employees, personnel, telephones, manufacturing facilities or other installations in North Carolina, Affidavit of Thomas A. Marzo at 1–2, it is clear Plaintiff and Defendants contemplated doing business together in North Carolina. Further, it is undisputed that the Parties did just that. The contacts necessitated by that relationship are sufficient under both *Internation-*

---

(b) Contracts with a sales representative to solicit orders for the product; and
(c) Compensates the sales representative, in whole or in part, by commission.
N.C.Gen.Stat. § 66–190(3) (1991).

**2.** "Sales Representative" is defined as:
 a person who:
 (a) Contracts with a principal to solicit wholesale orders;

(b) Is compensated, in whole or in part, by commission;
(c) Does not place orders or purchase for his own account or for resale;
(d) Does not sell or take orders for the sale of products at retail; and
(e) Is not an employee of the principal
N.C.Gen.Stat. § 66–190(4) (1991).

*al Shoe* and the North Carolina long-arm statute to support the exercise by this Court of personal jurisdiction over Defendants.

### 2. N.C.Gen.Stat. § 66–192(c)

■ As noted above, Plaintiff first entered into a Sales Representation Agreement with the Chenango companies in November of 1986. Subsequently, on 12 January 1988, Plaintiff entered into a new Sales Representation Agreement with Defendants. This Agreement, the "Matthews Agreement," was a mere addendum to the 1986 Sales Representation Agreement. In September of 1989, Plaintiff and Defendant American Board modified the Matthews Agreement. Atlantic Electronics terminated this Agreement in April of 1990.

Section 66–192(c) is but one part of Article 27 of Chapter 66 of the North Carolina General Statutes. That section, ratified by the North Carolina General Assembly during its regular session of 1989, applied only to contracts "entered into or renewed on or after [1 October 1989]." Session Laws 1989, c. 506, § 2. Here, the uncontroverted evidence is that the Agreement between the Parties was first entered into in November of 1986 and last modified in September of 1989. As such, Defendants contend § 66–192(c) does not apply to that Agreement and cannot serve as a basis of jurisdiction for this Court.

Article IV of the Matthews Agreement provides as follows in pertinent part:

*TERM OF AGREEMENT*

This Agreement shall commence on the date of execution by the parties hereto and shall continue in full force and effect until it is terminated in accordance with the terms.

A. *TERMINATION*

1. The term of this agreement shall be for one year from the date hereof and shall continue for successive periods of one year thereafter. First year, either party may terminate this agreement by giving thirty (30) days notice. During the second year, either party may terminate this agreement by giving sixty (60) days written notice to the other, and during the third and subsequent years by giving ninety (90) days written notice.

Exhibit A to Complaint of Plaintiff. Plaintiff and Chenango Industries Company executed the Matthews Agreement on 14 November 1989. Pursuant to its plain terms, the Agreement commenced on that date and continued for successive one-year terms until terminated. If each successive term amounts to a renewal of the contract, then the Matthews Agreement was last renewed on 14 November 1989. As such, the Matthews Agreement would be subject to § 66–192(c) which applied to all contracts entered into or renewed after 1 October 1989.

Having considered carefully the language of the Matthews Agreement, this Court finds that each successive one-year term is not a renewal of that Agreement, but is a mere continuation of the original 1986 Agreement. As noted above, the Agreement provides that it "shall *continue* in full force and effect until terminated . . . the term of this agreement shall be for one year from the date hereof and shall *continue* for successive periods of one year thereafter." Exhibit A to Complaint of Plaintiff (emphasis added). As such, the Agreement continued without interruption until terminated. As the Agreement was always in force, there was no need to renew its terms.

Given this interpretation of the Matthews Agreement, it follows that § 66–192(c) does not apply to that Agreement. Accordingly, this Court may not rely on that statute to establish jurisdiction over Defendants.

### 3. Choice-of-Law Clause—1986 Sales Representation Agreement

■ Article V (mistakenly designated Article IV) of the Matthews Agreement, at paragraph C, provides: "This Agreement shall be construed in accordance with and governed by the laws of the County of Broome and the State of New York." Defendants contend this provision of the Matthews Agreement is a forum-selection clause. The Court does not agree.

Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). However, the clause at issue here simply cannot be construed in the same manner as the clause at issue in *Zapata*. There, the contract between the parties required that "[a]ny dispute arising *must* be treated before the London Court of Justice." *Id.* at 2, 92 S.Ct. at 1909 (emphasis added). *See also, Sterling Forest Associates, Ltd. v. Barnett–Range Corp.*, 840 F.2d 249, 250 (4th Cir.1988) ("in any dispute jurisdiction and venue shall be in California"); *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 316 (4th Cir. 1982) (controversies "shall be submitted to the Supreme Court of the State of New York"). In contrast, the clause now before the Court says nothing about the site where interpretation must occur. It provides only that the Agreement "shall be construed in accordance with and governed by" the laws of New York. This is a classic choice-of-law clause and is not tantamount to a forum-selection clause. As such, Defendants may not rely upon that clause in support of their Motion to Dismiss.

### MOTION TO DISMISS FOR IMPROPER VENUE

■ Title 28, United States Code, section 1391 provides in pertinent part:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

28 U.S.C.A. § 1391(a) (West Supp.1991). Further, a corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C.A. § 1391(c) (West Supp.1991). Further, in a state which has more than one district, a corporate defendant is deemed to reside in any district with which it had sufficient contacts to subject it to personal jurisdiction were that district a separate state. *Id.*

As noted above, the Court has today found that Defendants are properly within the personal jurisdiction of this Court. Defendants had sufficient contacts both with the State of North Carolina and within this District to support personal jurisdiction. As such, venue is proper in this District. Defendants' Motion to Dismiss for Improper Venue is without merit.

### MOTION TO TRANSFER

■ Defendants contend that the interests of convenience and justice would be best served by the transfer of this case from the Western District of North Carolina, Charlotte Division, to the Northern District of New York, Binghamton Division.

■ Title 28, United States Code, section 1404 provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1990). The party moving for transfer has the burden of establishing that transfer is warranted. 1A Part 2 J. Moore, *Moore's Federal Practice* par. 0.345[5] (2d ed. 1991) [hereinafter *"Moore's"*]. The motion is committed to the sound discretion of the trial court to be exercised in light of all the circumstances of the case. *Id.*

This Court has long considered several factors in weighing the merits of a motion to transfer. Those factors are:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

*Uniprop Mfrd. Housing Communities Income Fund v. Home Owners Funding Corp. of America,* 753 F.Supp. 1315, 1322 (W.D.N.C.1990). The analysis of these factors is qualitative, not merely quantitative. *Id.* The Court will briefly address each of these factors below.

### 1. Plaintiff's Choice of Forum

██ This Court has long accorded the plaintiff's choice of forum great weight. *Id.; Western Steer–Mom N'Pop's, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 265 (W.D.N.C.1984). A plaintiff's choice of forum is a paramount consideration in this Court's determination of any motion to transfer; that choice will not be lightly disturbed. *Uniprop,* 753 F.Supp. at 1322; *Moore's,* par. 0.345[5]. This is again true in this case. Accordingly, this factor favors Plaintiff.

### 2. Residence of Parties

All Parties are Corporations. As noted above, Plaintiff is a North Carolina Corporation with its principal office and place of business in Mecklenburg County, North Carolina. Affidavit of David P. Riggins at 1. American Board is a New York Corporation with its principal office and place of business in Vestal, Boone County, New York. Complaint of Plaintiff at 1. Carolina Assemblies is a South Carolina Corporation with its principal office and place of business in Myrtle Beach, Horry County, South Carolina. *Id.* U.S. Assemblies is a Pennsylvania Corporation with its principal office and place of business in Hallstead, Susquehanna County, Pennsylvania. *Id.* The President of Plaintiff is a resident of Mecklenburg County, North Carolina. Affidavit of David P. Riggins at 1. The owner of all Defendants is a resident of Broome County New York. Affidavit of Thomas A. Marzo at 4.

Given the respective residences of the corporate Parties and their principals, it is evident Defendants will suffer greater inconvenience in this Court than will Plaintiff. Conversely, should the Court transfer this action to the New York Court, Plaintiff would suffer similar inconvenience. As such, the Court finds this factor favors neither Plaintiff nor Defendants; the Court will accord this factor no weight.

### 3. Relative Ease of Access of Proof

In this action, Plaintiff is seeking damages based on sales commissions allegedly due Plaintiff from Defendants. Defendants aver that records of these sales are located and maintained in "New York, South Carolina, Pennsylvania, or in a state other than North Carolina." Affidavit of Thomas A. Marzo at 4; Affidavit of G. Peter Van Zandt at 2. Defendants also aver that their likely witnesses reside in New York and South Carolina. Although Plaintiff does not specifically aver where its corresponding records are kept, the clear implication from the affidavit of David P. Riggins is that those records are in Mecklenburg County, North Carolina. Plaintiff does aver that its witnesses are residents of North Carolina, and that many of them are not subject to the subpoena power of the New York Court. Affidavit of Frank W. Snepp at 1.

The Court finds that this factor favors neither party. If this action is transferred, Plaintiff must cart its evidence to New York. If it is not, Defendants must cart

their evidence to North Carolina. In such a situation, there is no principled manner in which to determine the relative burdens borne by the Parties. As such, the Court will accord this factor no weight.

#### 4. Availability of Compulsory Process

The witnesses listed by Plaintiff are all residents of North Carolina. As such, all are subject to the compulsory process of this Court, but not all are subject to the compulsory process of the New York Court. The witnesses listed by Defendant are residents of New York and Horry County, South Carolina. As such, those witnesses, save those witnesses who are officers of Defendants, are not subject to the compulsory process of this Court.

The majority of Plaintiff's likely witnesses are not employees or officers of Plaintiff. As such, Plaintiff would not have compulsory process available in the New York Court for these witnesses. Conversely, it is apparent that at least one-half of those witnesses listed by Defendants are officers of Defendants. As such, compulsory process is available to this Court for those witnesses. Fed.R.Civ.P. 45(c). Accordingly, this factor favors Plaintiff.

#### 5. Possibility of a View

There is no indication a view will be necessary in the trial of this action. This factor favors neither Plaintiff nor Defendants and will be accorded no weight.

#### 6. Enforceability of a Judgment

This factor does not appear significant to this action. The Court will accord it no weight.

#### 7. Relative Advantages & Obstacles to a Fair Trial

The Court believes the Parties will obtain a fair trial in either the New York Court or this Court. As such, this factor favors neither Plaintiff nor Defendants and will be accorded no weight.

#### 8. Other Practical Problems

This Court is aware of no practical problems not related to matters of process and the location of documentary evidence. As the Court has previously addressed those issues, it need not reconsider them here. As such, this factor favors neither Plaintiff nor Defendants and will be accorded no weight.

#### 9. Court Congestion

In 1991, there were 295 civil cases filed per Judge in the United States District Court for the Northern District of New York. There are now pending in that District 709 civil cases per Judge and there were an average of 18 civil trials completed per Judge during 1991. In that District, the median time (in months) from filing to disposition is 12 and from issue to trial is 27.

In the same year, there were 254 civil cases filed per Judge in the United States District Court for the Western District of North Carolina. There are now pending in this District 364 civil cases per Judge and there were an average of 41 trials completed per Judge during 1991. Further, in this District, the median time (in months) from filing to disposition is 8 and from issue to trial is 17. Administrative Office of the United States Courts, *Federal Court Management Statistics, 1991* at 46 and 68.

These statistics reveal that this District has fewer civil filings, fewer pending cases, and a quicker disposition time than does the Northern District of New York. As such, this factor favors Plaintiff.

#### 10. Localized Controversies and Familiarity with State Law

As this Court discussed above, the Sales Representation Agreement entered into by the Parties contains a choice-of-law clause. That clause dictates that this matter be decided pursuant to the laws of the State of New York.

There is little doubt that the Federal Courts of the State of New York are more familiar with the laws of that State than are the Federal Courts of North Carolina. As such, this factor favors Defendants.

**214**

However, the Court notes that this Court has the capability to ascertain and apply the law of New York.

*11. Conflict of Laws*

There appears to be no reason why the trial of this action will involve issues related to conflict of laws. As noted, the Agreement provides that this action will be decided pursuant to the laws of the State of New York. Both this Court and the New York Court can apply those laws in the correct manner. Accordingly, this factor favors neither Plaintiff nor Defendants and will be accorded no weight.

Having appropriately considered each of these factors, this Court believes transfer is not proper in this instance. There simply are no considerations—no factors—which favor Defendants in a way so substantial as to offset the strong interest Plaintiff has in maintaining this action in its forum of choice.

## CONCLUSION

The Court has considered each of Defendants' Motions. Having done so, the Court finds that each is without merit. This Court may properly exercise personal jurisdiction over Defendants, venue is proper in the Western District of North Carolina, and transfer of venue is not warranted. Moreover, because the Court has today found that Article 27, Chapter 66 of the North Carolina General Statutes does not apply to this action, it will now order dismissed Plaintiff's second claim for relief.

NOW, THEREFORE, IT IS ORDERED that:

1. The Motion of Defendants to Dismiss for Lack of Personal Jurisdiction be, and hereby is, DENIED;
2. The Motion of Defendants to Dismiss for Improper Venue be, and hereby is, DENIED;
3. The Motion of Defendants to Transfer this Action to the United States District Court for the Northern District of New York be, and hereby is, DENIED;
4. Plaintiff's Second Claim for Relief, grounded in N.C.Gen.Stat. § 66–192

(1991) be, and hereby is, DISMISSED WITH PREJUDICE.